# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 98-1372

ROBERT H. WERDEN, APPELLANT,

V.

TOGO D. WEST, JR.,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued April 4, 2000                                     Decided    May 5, 2000  )

*Lawrence B. Hagel*, of Washington, D.C.,  was on the brief for the appellant.

*Leigh A. Bradley*, General Counsel; *Ron Garvin*, Assistant General Counsel; *Mary Ann Flynn*, Acting Deputy Assistant General Counsel; and *Ralph G. Davis,* of Washington, D.C., were on the brief for the appellee.

Before HOLDAWAY, IVERS, and GREENE, *Judges*.

HOLDAWAY, *Judge*: The appellant, Robert H. Werden, appeals from an April 1998 decision of the Board of Veterans' Appeals (BVA or Board) which found that it did not have jurisdiction to review the manner in which VA authorized disbursement of a specially adapted housing grant.  Both parties have filed briefs.  The Court has limited jurisdiction over the matter to determine whether the Board's finding was erroneous.  For the following reasons, the Court will dismiss the appeal.

## I.  FACTS

The appellant served on active duty in the U.S. Air Force from February 1954 to August 1954.  While on active duty, the appellant was diagnosed with multiple sclerosis.  Subsequently, he was awarded service connection for this disability and was assigned a 100% disability rating.  Eventually, his condition deteriorated and resulted in the loss of use of both his feet.  The appellant

applied for and VA awarded him a special adaptive housing grant to modify his home to accommodate his disability. The grant totaled $35,000, which was placed in an escrow account. The terms of the escrow agreement provided that any dispute not settled by the parties would be turned over to "the Chief Benefits Director, Department of Veterans Benefits" who would render a final decision on the dispute.

Rather than remodel his old home to meet his requirements, the appellant decided to build a new home which would accommodate his disability. Consequently, the appellant entered into a contract with Taggart Construction Company to build a new specially adapted house. The terms of the contract indicated that VA would contribute the $35,000 from the escrow account to the price of the home and the appellant would pay the balance, over $200,000, out of his own personal funds and through a conventional mortgage. The contract stipulated that the builder would be paid periodically as he completed each stage of development proportionate to the amount completed. The first series of payments would be made with the appellant's personal funds and loans and the last payments would be made with the $35,000 VA contributed to the escrow account. Throughout the construction, the local VA regional office (VARO) sent inspectors to the site as each stage was completed. If the inspectors found that the house was not in compliance, the VARO would order the contractor to make corrections immediately. These corrections would be for both specially adaptive housing required features as well as for features of general construction.

During the final stages of construction, the appellant entered into a dispute with Taggart and claimed that his house was faulty and that it was not in compliance with VA standards on specially adapted housing. His complaints were related both to items designed to meet the needs of his service-connected disability and to items of general construction. By this time, the appellant had paid the contractor all of the funds from his personal account and loans as he was required to do in the contract. The only funds left were the VA grant money in the escrow account. In order to provide the contractor with an incentive to finish the work, the appellant requested that VA hold the money in escrow.

On January 27, 1988, a VA compliance officer inspected the house and determined that the house was completed and found "no evidence of non-compliance observed," although he did note some "substitutions or deviations" on his form. The next day, the VARO sent written authorization

to the bank to release the escrow funds payable to "Mr. Robert Werden and Taggart Construction." On April 4, 1988, the appellant sent VA a lengthy list of things he alleged were wrong with the house. Again, these items were both related to his special accommodations (for example, the window operators and latches are not accessible from a wheel chair) and not related (for example, the staircase had not been installed). Because these items had not been completed, the appellant refused to sign the check over to the contractor.

On April 23, 1988, the contractor filed a lien on the appellant's home for over $47,000. The contractor also contacted VA and requested that it stop payment on the check issued and reissue a check solely to the contractor for the $35,000. The VARO then informed the appellant that it had erred in making the check out to both parties and demanded that the appellant return the check. The VARO stated that the check should have been made out solely to the contractor. The appellant then contacted an attorney, W. Daniel Schneider. On April 29, 1988, Mr. Schneider wrote a letter to the VARO and enclosed the check. He stated that although he was returning the check, he did not believe that its issuance was in error. He also stated, "It is our further understanding, based on that conversation, that this check will be put in an escrow account and will not be paid over until after a VA inspection is conducted on Tuesday, May 3, 1988, at 9:00 a.m. in the Werden home." He also stated that he believed that the funds should not be turned over to the contractor without the consent of the appellant.

Apparently, the VARO had a different understanding of the conversation referred to by Mr. Schneider and sent written notification to the parties. The VARO stated that "compliance inspections are for the benefit of [VA], not the veteran." The VARO stated that neither party should rely on VA inspections in support of their respective positions and that under no circumstances would it "involve itself in any private dispute remaining between the veteran and builder." Nonetheless, the VARO stated that under DVB Manual 26-12, the veteran may request a "holdback" for work not yet completed. Although the appellant did not specifically request such a holdback, the VARO inferred such a request from the nature of his complaints. Therefore, the VARO held back twice the cost of the unfinished work and issued a check to the contractor for over $14,000. The remainder was held back pending a VA inspection.

In August 1988, the appellant hired an inspector to review his home for violations of the New Mexico Uniform Building Code. The inspector, David M. Beene, found three code violations: erosion of a fill slope, a below grade stem wall, and inadequate ventilation in the attic and joint spaces. Thereafter, the appellant made another request to the VARO not to release any more funds from the escrow account. A VA inspection of the home in August 1988 indicated that two problems remained: soil erosion and inadequate boiler control. The VARO notified the contractor that the soil erosion problems violated VA minimum property standards. Nonetheless, in September 1988, VA authorized payments to Taggart in excess of $13,000, to an exterminator for more than $2600, and reimbursed the appellant $450.00 for expenses. This left about $5000 in the escrow account.

In November 1988, the appellant's attorney filed a formal complaint with the New Mexico Attorney General's Office and the home was inspected by John Sintas, an inspector for the State of New Mexico. The appellant stated that Mr. Sintas found that the home was in violation of several code provisions, including some mentioned above. Again, the appellant requested that the VARO not authorize any more payments out of the escrow account.

In December 1988, Taggart replied to the appellant's allegations and stated that both the city building inspector and the State Construction Commission had examined the appellant's home and found no code violations. Taggart said that any remaining problems with the home, such as soil erosion, related to landscaping which is "specifically excluded from the contract." Taggart requested that the VARO release the remaining $5000 to him.

In January 1989, the VARO determined that all requirements had been met and released the remaining funds to Taggart who then released the lien on the escrow account. In April 1989, the appellant filed a Notice of Disagreement (NOD) with the VARO's actions. After receiving the NOD, the VARO sent the appellant a letter stating that there was nothing to appeal because this was a contract dispute between him and Taggart. Eventually, after receiving orders from VA's Central Office, the VARO issued a Statement of the Case (SOC).

In February 1991, the appellant testified at a personal hearing. He stated that in his opinion, due to the soil erosion and structural problems with the house, it was virtually unlivable. He said he had no idea how much it would cost to fix it, but estimated that it probably would run between $100,000-$300,000. He also stated that under his contract, all disputes had to be settled in

4

arbitration and that the arbitrator had found in favor of the contractor. The appellant argued that VA was at fault because he believed that it had disregarded VA minimum standards and had paid the contractor even though he had not completed his work.

In August 1991, the Board issued a decision finding that there was no disputed issue over which the Board had jurisdiction. In September 1995, the appellant testified at a second hearing and reiterated his claims that VA had violated its own rules in paying the contractor without his consent and before construction had been completed. In addition, the appellant also presented testimony from Todd I. Blue, a builder and an inspector in the area. Mr. Blue testified that he had reviewed the plans for the home and found them to be inadequate and in clear violation of the building codes. He also reported various other problems with the home. The appellant also presented testimony from Thomas D. Davis, an architect who specializes in designing homes for paralyzed individuals. Mr. Davis formerly worked for VA and testified that the home didn't meet VA minimum standards.

In April 1996, the Board solicited an opinion from VA General Counsel (VAGC). In January 1997, the VAGC issued an opinion which held that the Board did not have jurisdiction because the Board has jurisdiction only to hear appeals concerning the eligibility for benefits and not the "day-to-day decisions regarding how VA actually provides benefits." In April 1998, the Board issued a decision which relied on the VAGC opinion and found that it did not have jurisdiction over the matter.

## II. ANALYSIS

Under 38 U.S.C. § 2101,

> The Secretary is authorized . . . to assist any veteran who is entitled to compensation under chapter 11 of this title for permanent and total service-connected disability due to the loss, or loss of use, of both lower extremities . . . in acquiring a suitable housing unit with special fixtures or movable facilities made necessary by the nature of the veteran's disability. . . .

38 U.S.C. § 2101(a). "[T]he assistance authorized by section 2101 of this title shall not be available to any veteran more than once." 38 U.S.C. § 2104(a). Furthermore, the "Government of the United States shall have no liability in connection with any housing unit, or necessary land therefor, or adaption acquired under the provisions of this chapter." 38 U.S.C. § 2105.

5

Once VA has determined that a claimant is authorized a special adaptive housing grant under 38 U.S.C. § 2101, the Secretary has discretion to determine how those funds are distributed.

> After approval of an application for a grant, the Secretary shall decide upon a method of disbursement which in the Secretary's opinion is appropriate and advisable in the interest of the veteran and the Government and disburse the benefit payable accordingly. Disbursements may be made to third parties who have contracted with the veteran, or to an escrow agent under conditions imposed by the Secretary.

38 C.F.R. § 36.4406.

The Board has jurisdiction to review all questions in a matter which under 38 U.S.C. § 511(a) is subject to decision by the Secretary. *See* 38 U.S.C. § 7104(a). Section 511(a) states: "The Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans." If a decision is committed by statute to the Secretary's discretion, and where by statute or regulation there exists a judicially manageable standard limiting the Secretary's discretion, the Board must review the Secretary's decision to insure that it was made within the statutory or regulatory confines. *See Meakin v. West*, 11 Vet.App. 183, 186 (1998) (holding that the Board had jurisdiction to review the Secretary's determination of whether a veteran was eligible for fee-basis outpatient treatment because the Secretary had promulgated regulatory guidance); *Scott v. Brown*, 7 Vet.App. 184, 189-90 (1994) (holding that Secretary's discretionary decision about whether to extend the period for filing an NOD was reviewable because the regulatory requirement of "good cause" was a sufficiently manageable standard).

However, where a decision is committed to the discretion of the Secretary and no manageable standards exist to evaluate that decision, the decision is committed to the Secretary's discretion absolutely, and the Board lacks jurisdiction to review such a determination. *See Willis v. Brown*, 6 Vet.App. 433, 435-36 (1994) (holding that the Secretary's appointment of a fiduciary under 38 U.S.C. § 5502(a)(1) was a decision "which rests entirely within his discretion" and "the appointment decision was not a matter for redetermination at . . . the Board"); *see also Malone v. Gober*, 10 Vet.App. 539, 544-45 (1997) (holding that the Court was precluded from reviewing the Secretary's determination regarding nursing-home care because the decision was committed by

statute to the Secretary's unfettered discretion and the Secretary had not promulgated any regulations limiting his discretion).

The Court has explained that an all-purpose "abuse of discretion" standard is not appropriate where a decision has been committed to the Secretary's discretion and no criteria exist to measure the decision. *See Malone, supra*; *Darrow v. Derwinski*, 2 Vet.App. 303, 306 (1992). The purpose of appellate review, whether by the Board or by this Court, is to ensure that the facts found and the laws applied were appropriate. Where the decision is absolutely discretionary, it is *impossible* for the Board to certify whether the necessary facts existed to satisfy the applicable law. *See Heckler v. Chaney*, 470 U.S. 821, 830 (1985) (stating that if no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is *impossible* to evaluate agency action for 'abuse of discretion.'") (emphasis added); *see also Tulingan v. Brown*, 9 Vet.App. 484, 488 (1996) (Farley, J., concurring) (pointing out that the committed-to-agency-discretion rule was part of the common law of judicial review of agency action). Instead, the only method of review available to the Board would be to exercise its own discretion in substitution of the Secretary's. Such de novo review is clearly contrary to Congress' intent when the plain language of the statute vests absolute discretion in the Secretary and the Secretary has not limited his discretion by regulation. Generally, where a decision is committed to the Secretary's sole discretion, Congress has determined that there are questions of policy or resource management that are to be made by the executive branch and are not appropriate for judicial interference. *See Webster v. Doe*, 486 U.S. 592 (1998); *Heckler, supra*.

Applying the above analysis to the case at bar, there is no question that the Board, and ultimately this Court, has jurisdiction to review a VARO's decision concerning a claimant's eligibility for a special adaptive housing grant. *See Pappalardo v. Brown*, 6 Vet.App. 63 (1993). However, the Court does not have jurisdiction to review the manner in which the Secretary disburses that grant. Under the terms of the implementing regulation, the funds are disbursed in a manner deemed appropriate in the Secretary's opinion. 38 C.F.R. § 36.4406. Thus, the manner in which the funds are disbursed is committed solely to the Secretary's discretion. This is exactly the type of question of policy or resource management that is made by the executive branch and is not an appropriate matter for judicial review. *See Webster, supra.*

Moreover, even assuming that the Court found jurisdiction to review the manner in which the Secretary disbursed the special adaptive housing funds and found that the Secretary had committed legal error, the Court would have no remedy to apply. Under 38 U.S.C. § 2104(a), the Secretary is prohibited from paying this grant to a claimant more than once. Since the Secretary has already provided a special adaptive housing grant to the appellant, the appellant is prohibited by statute from receiving any more money under this section. The appellant argues, nonetheless, that the Court should not consider the grant paid because the appellant has not enjoyed the benefits of that grant. The Court rejects that argument and refuses to distort the plain meaning of the statute. Under 38 C.F.R. § 36.4406, the Secretary is authorized the make payments to contractors directly for work performed on behalf of recipients of this grant. Here, the Secretary made a payment to the contractor for work performed on the appellant's home. Under any interpretation of this regulation, the appellant clearly received the benefit authorized. The $35,000 of the grant is now part of the equity in the house. Any additional payments to the appellant under this statute, therefore, would be prohibited.

In his brief, the appellant argues four points. First, he argues that the VARO violated the terms of the escrow agreement by failing to submit this dispute to the Chief Benefits Director. Second, he argues that the VARO ignored VA internal operating procedures by failing to make staged payments made up of proportionate amounts of VA and private funds. Third, he argues that VA failed to properly inspect the home before making payments as required. Finally, he argues that the Chairman of the Board erred by delegating this decision to the VA General Counsel.

Regarding the appellant's first three arguments, as described above, neither this Court nor the Board possesses jurisdiction to review these types of claims which seem to fall under the rubric of tort or contract. The appellant has not shown that but for the Secretary's putative errors, he would have been provided with any additional benefit, because he already has been provided with the full amount of the benefit sought. In addition, since the Secretary is prohibited from providing a second grant, the appellant has no legal remedy in this Court for any alleged violation. Finally, an attempt to impose liability on the Secretary for the putative "failures" would be expressly barred by statute. *See* 38 U.S.C. § 2105 ("The Government of the United States shall have no liability in connection

with any housing unit, or necessary land thereof, or adaption acquired under the provisions of this chapter").

Regarding the appellant's final argument, the Court does possess limited jurisdiction to determine whether his due process rights were violated by the Board in soliciting an opinion from the VA General Counsel. The Court finds, however, that this argument is without merit. Clearly, the Board has authority to secure an opinion from the General Counsel. *See* 38 C.F.R. § 20.901; *Sabonis v. Brown*, 6 Vet.App. 426 (1994). The appellant has not provided any reasons why this regulation is contrary to statute or how the Secretary's implementation of this regulation constitutes an abuse of discretion. By definition, the Board includes the Chairman of the Board. 38 U.S.C. § 7101(a). In any event, the Chairman acting in his capacity of administrative chief of the Board certainly may perform the ministerial act of requesting an opinion as to its jurisdiction on behalf of the Board. Furthermore, this action did not violate 38 U.S.C. § 7102 which prohibits assignment "to the Chairman as an individual member," because the matter was eventually decided upon by a member of the Board, not the Chairman himself.

## III. CONCLUSION

Finding no jurisdiction to consider the matter, the appeal is DISMISSED.