# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 14-2449

JOSE V. KUPPAMALA, APPELLANT,

V.

ROBERT A. MCDONALD,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued October 14, 2015                               Decided December 30, 2015)

*Landon E. Overby*, of Providence, Rhode Island, argued before the Court. *Shatilla Shera B.D. Cairns*, of Providence, Rhode Island, was on the brief for the appellant.

*Ronen Z. Morris*, of Washington, D.C., argued before the Court. *Jonathan G. Scruggs*, with whom, *Leigh A. Bradley*, General Counsel; *Mary Ann Flynn*, Assistant General Counsel; and *Christopher W. Wallace*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before DAVIS, SCHOELEN, and BARTLEY, *Judges*.

SCHOELEN, *Judge*: The appellant, Jose V. Kuppamala, through counsel, appeals a June 27, 2014, Board of Veterans' Appeals (Board) decision in which the Board denied his claim for a rating in excess of 50% for ulcerative colitis, status post colectomy. Record of Proceedings (R.) at 3-7. This appeal is timely, and the Court has jurisdiction to review the Board's June 2014 decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). This matter was referred to a panel of the Court, with oral argument, to address whether the Board has the authority to review a decision by the Director of Compensation Service[1] awarding an extraschedular disability rating under 38 C.F.R. § 3.321(b)(1)

---

[1] In January 2014, VA's Compensation and Pension Service was renamed the "Compensation Service." *See* VA Compensation Service and Pension and Fiduciary Service Nomenclature Changes, 79 Fed. Reg. 2,099, 2,099 (Jan. 13, 2014). For the sake of clarity, the Court will hereinafter refer to the Director of VA's Compensation Service simply as the "Director."

(2015).[2]  For the reasons discussed below, the Court holds that the Board reviews the Director's award of an extraschedular rating de novo.  Upon review of the parties' arguments, the Court will vacate the Board's June 2014 decision and remand the matter for proceedings consistent with this decision.

## I. BACKGROUND

Mr. Kuppamala served on active duty in the U.S. Air Force from September 1987 to September 1991.  R. at 254.  In August 2000, Mr. Kuppamala submitted a formal claim for disability compensation for ulcerative colitis.  R. at 342-46.  A December 2001 rating decision granted service connection for ulcerative colitis under Diagnostic Code (DC) 7323 with a 10% disability rating, effective August 16, 2000.  R. at 255-61.  After receiving medical records from November 2002 showing that Mr. Kuppamala underwent a total colectomy for his chronic ulcerative colitis (R. at 230-37), the VA regional office (RO) issued a February 2003 rating decision increasing his disability rating for ulcerative colitis to 20%, effective from March 12, 2002, to October 31, 2002, and to 100% from October 31, 2002, to January 1, 2003; and assigned a 10% disability rating from January 1, 2003 (R. at 226-29).[3]  In May 2003, Mr. Kuppamala underwent a VA digestive conditions examination in which he reported symptoms of chronic fatigue and chronic diarrhea following his colon resection.  R. at 213-19.  That same month, VA assigned a 40% disability rating under DC 7329 for residuals of resection of the large intestine from January 31, 2003; 40% is the highest available rating under DC 7329.  R. at 209-11.

In July 2007, Mr. Kuppamala filed a claim for an increased rating for ulcerative colitis asserting that "the condition has grown worse than currently rated."  R. at 195-200.  In an October 2007 VA examination, Mr. Kuppamala reported having approximately 14 bowel movements per day and up to 2 to 3 bowel movements each night, which caused extreme fatigue.  R. at 166.  The

---

[2] Oral argument was held on October 14, 2015,  in Baltimore, Maryland, at the University of Baltimore Law School.  The Court extends its appreciation to the law school for its hospitality.

[3] The 100% disability rating was extended through the end of January 2003 based on the need for convalescence after surgery.  R. at 209-11.

examiner also noted that Mr. Kuppamala "feels stressed because of the time he has to spend in the bathroom, both during his working hours and at night." *Id.* The examiner diagnosed "ulcerative colitis, status post total colectomy with residuals of frequent passage of soft tan stools causing disruption of the veteran's sleep and work schedules with attendant stress caused by his fatigue and need for frequent bathroom stops." R. at 167.

A January 2008 rating decision continued the 40% disability rating. R. at 158-62. Thereafter, Mr. Kuppamala timely appealed to the Board. R. at 130-31, 132-44, 152-55. In his Substantive Appeal, Mr. Kuppamala reported experiencing weight loss, loss of appetite, reduced energy, and disrupted sleep that caused problems with memory and concentration – all related to his frequent daytime and nighttime bowel movements. R. at 130-31. In March 2010, Mr. Kuppamala submitted a letter explaining that he suffered from physical and emotional distress because of his frequent bowel movements and asserting that he experienced "low back pain and leg pain 3 times last year due to frequently need[ing] to go to the restroom." R. at 100.

In an April 2010 VA examination, Mr. Kuppamala endorsed a 20-pound weight loss and occasional incontinence. R. at 102. The examiner also noted "daily diarrhea" and observed that Mr. Kuppamala's symptoms interfered with his work as an x-ray technician because he "will have to stop in the middle of x-rays with patients [and] go to the bathroom [and] sometimes doesn't get there in time." *Id.* Mr. Kuppamala was not able to perform jury duty because "he would never be able to sit in a courtroom without needing to go to the bathroom many times." *Id.* Mr. Kuppamala also described being very concerned about being able to locate a bathroom in time when on vacation and while flying or driving his children to school. *Id.* The examiner noted that "[i]f [Mr. Kuppamala] goes to social functions, [he] must think whether or not a bathroom will be [available and] may skip the function if he doesn't think a bathroom will be available to him[;] he does no outside camping." *Id.*

In a December 2011 Board decision, the Board remanded Mr. Kuppamala's claim "for consideration of extraschedular entitlement, to include a referral to the Director of Compensation and Pension Service." R. at 54. In May 2012, the Director found that the rating schedule under DC 7323-29 does "not address the frequency of the severe symptoms" and that the "frequency of the symptoms presents the exceptional or unusual disability picture affecting [Mr. Kuppamala's] ability

to perform his occupational duties as an x-ray technician causing marked interference with employment." R. at 45. The Director decided that an extraschedular evaluation was warranted and awarded a 10% extraschedular rating. R. at 46. Subsequently, VA implemented the Director's decision and increased Mr. Kuppamala's disability rating for his service-connected ulcerative colitis to 50%, effective July 23, 2007. R. at 35-44. Mr. Kuppamala appealed this extraschedular rating. R. at 18.

In the June 2014 decision on appeal, the Board noted that Mr. Kuppamala's symptoms of frequent loose bowel movements and bowel incontinence left him unable to work alone or in specialty clinics because he needs to use the bathroom so often. R. at 6. The Board then summarized the Director's decision before stating that "[a] 50% rating for ulcerative colitis, status post colectomy, is warranted." *Id.* This appeal followed.

## II. THE PARTIES' ARGUMENTS

Mr. Kuppamala argues that the Board failed to fulfill its obligation to provide a de novo review of the Director's decision. Appellant's Brief (Br.) at 5, 9. He asserts that the Board merely repeated the Director's analysis – which is improper both because the Director's decision is not evidence and because the Board was obligated to conduct its own independent review of the evidence and provide adequate reasons or bases for its decision. *Id.* at 9-10. Consequently, he contends, the Board did not fully consider other symptoms beyond the frequency of his bowel movements – including weight loss, loss of appetite, disturbed sleep, fatigue, memory and concentration problems, and low back and leg pain – that make up his complete disability picture. *Id.* at 11-12. Mr. Kuppamala argues that had the Board properly considered these symptoms, the Board may have found he was entitled to a higher rating. *Id.* at 14.

The Secretary responds that neither the Board nor the Court has the authority to review the Director's decision awarding an extraschedular rating. Secretary's Br. at 8. The Secretary identifies four reasons why the Director's decision is discretionary and not subject to review: (1) Awarding an extraschedular rating is a policy-based decision; (2) there are no manageable judicial standards for the Board to apply and the Board lacks the necessary expertise to assign an extraschedular rating; (3) the plain language of 38 C.F.R. § 3.321(b) authorizes only two entities to award extraschedular

ratings – the Director and the Under Secretary for Benefits; and (4) subjecting the Director's decision to review renders the regulation unworkable and in conflict with 38 U.S.C. § 7252. Oral Argument (Arg.) at 09:35. Consequently, the Secretary argues that although the Board normally must provide reasons or bases explaining its decision, any deficiency in the Board's analysis is harmless here because the Board lacks the authority to review the Director's decision. *Id.* at 16-17.

## III. ANALYSIS

### A. The Scope of the Board's Jurisdiction

This case raises a question of the Board's jurisdiction: Whether the Board has jurisdiction to review the Director's assignment of an extraschedular rating.[4] Section 511(a) of title 38, U.S. Code, states that "[t]he Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans." 38 U.S.C. § 511(a). The U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has construed the reference to "law" in section 511(a) as broadly referring to any "single statutory enactment that bears a Public Law number in the Statutes at Large." *Bates v. Nicholson*, 398 F.3d 1355, 1361 (Fed. Cir. 2005). Accordingly, the Federal Circuit found that an interpretation of section 511(a) that "generally places review of Secretarial decisions under a single piece of legislation relating in whole or in part to benefits first in the Board, and then in the Court of Appeals for Veterans Claims clearly serves the congressional purpose [behind the 1988 Veterans Judicial Review Act]." *Id.* at 1365.

The Board is an agent of the Secretary, as are the ROs. *Disabled Am. Veterans v. Sec'y of Veterans Affairs*, 327 F.3d 1339, 1346-47 (Fed. Cir. 2003) (citing 38 U.S.C. § 7101(a) (2000)). The Board's jurisdiction derives from 38 U.S.C. § 7104(a), which provides:

---

[4] To the extent that the Secretary argued in his brief and at oral argument that 38 U.S.C. § 7252 limits the Court's review of the Director's decision, this case raises a question of the Board's jurisdiction and ability to review the Director's decision. By deciding that the Board must review the Director's decision and remanding the matter for the Board to conduct that review, the Court need not consider the scope of its own review over the Director's decision or its ability to assign an extraschedular rating.

> (a) All questions in a matter which under section 511(a) of this title is subject to decision by the Secretary shall be subject to one review on appeal to the Secretary. Final decisions on such appeals shall be made by the Board. Decisions of the Board shall be based on the entire record in the proceeding and upon consideration of all evidence and material of record and applicable provisions of law and regulation.

The Federal Circuit has explained that "[t]ogether, §§ 511(a) and 7104(a) dictate that the Board acts on behalf of the Secretary in making the ultimate decision on claims and provides 'one review on appeal to the Secretary' of a question 'subject to decision by the Secretary' under § 511(a)." *Disabled Am. Veterans*, 327 F.3d at 1347. Importantly, section 7104, unlike this Court's jurisdictional statute, does not limit the Board's ability to review favorable findings. *Compare* 38 C.F.R. § 7104(a), *with* 38 U.S.C. § 7261(a)(4); *see Anderson v. Shinseki*, 22 Vet.App. 423, 428 (2009). Thus, generally, the Board may review the entire Agency decision below. However, there is an exception: "Where a decision is committed to the discretion of the Secretary and no manageable standards exist to evaluate that decision, the decision is committed to the Secretary's discretion absolutely, and the Board lacks jurisdiction to review such a determination." *Werden v. West*, 13 Vet.App. 463, 467 (2000).

*1. Judicially Manageable Standards for Review of the Director's Extraschedular Decision*

At oral argument, relying on *Werden*, the Secretary argued that here there are no judicially manageable standards governing the Director's decision as to extraschedular ratings and that, therefore, it would be impossible for the Board to review the decision. Rather, the Secretary suggests that the Board's only obligation is to recognize that the Director made the decision and assigned a particular rating.[5] For the reasons discussed below, the Court disagrees.

---

[5] In his brief, the Secretary argued that the Board may review the Director's factual assessment of the veteran's disability picture and interpretation of the rating schedule as to whether it contemplates that picture applying a de novo and deferential standard respectively. Secretary's Br. at 1-12. However, the Secretary contends that the award of an extraschedular rating is insulated from review because it involves a policy judgment on the average impairment in earning capacity caused by that disability. *Id.* at 12. By contrast, at oral argument, the Secretary argued that even if the Director made a factual misstatement or "left out a critical part of the analysis," the Board's review was limited to an acknowledgment that the Director made a decision. Oral Arg. at 28:45. Because the Court finds that, contrary to the Secretary's broader position advanced at oral argument, the entire decision is reviewable, the Court need not address the narrower argument: It is subsumed by the broader analysis.

In *Werden*, the appellant challenged the Board's decision that it lacked jurisdiction to review the manner in which VA dispersed the appellant's special adaptive housing grant. 13 Vet.App. at 466. The authorizing regulation gave the Secretary discretion to "decide upon a method of disbursement which *in the Secretary's opinion* is appropriate and advisable in the interest of the veteran and the Government and disburse the benefit payable accordingly." *Id.* at 467 (citing 38 C.F.R. § 36.4406 (1999)) (emphasis added). The Court determined that the implementing regulation committed the question of disbursement "solely to the Secretary's discretion" and stated that "[t]his is exactly the type of question of policy or resource management that is made by the executive branch and is not an appropriate matter for judicial review." *Id.* at 468. Therefore, *Werden* explained that de novo review by the Board is inappropriate "when the plain language of the statute vests absolute discretion in the Secretary and the Secretary has not limited his discretion by regulation." *Id.*

Accordingly, the Court must consider whether the statute and regulation governing extraschedular ratings committed the assignment of a rating solely to the Secretary's discretion. As the Secretary acknowledged at oral argument, the authority for 38 C.F.R. § 3.321(b) derives from 38 U.S.C. § 1155. Oral Arg. at 25:00; 30:42; 33:42. Section 1155 provides that "the Secretary shall adopt and apply a schedule of ratings of reductions in earning capacity from specific injuries or combination of injuries. The ratings shall be based, as far as practicable, upon the average impairments of earning capacity resulting from such injuries in civil occupations." 38 U.S.C. § 1155. Although the Secretary has discretion to create a schedule of ratings, there is a guiding principle: The ratings shall be based on the average impairment of earning capacity resulting from service-connected disabilities.

The governing regulation, 38 C.F.R. § 3.321(b) authorizes the assignment of an extraschedular rating stating:

> To accord justice, therefore, to the exceptional case where the schedular evaluations are found to be inadequate, the Under Secretary for Benefits or the Director, Compensation and Pension Service, upon field station submission, is authorized to approve on the basis of the criteria set forth in this paragraph an extra-schedular evaluation commensurate with the *average earning capacity impairment* due exclusively to the service-connected disability or disabilities. The governing norm in these exceptional cases is: A finding that the case presents such an exceptional or

7

unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards.

*Id.* (emphasis added). Thus, as the Secretary discussed at oral argument, VA may only assign an extraschedular rating based on the "analytic formula" identified in section 1155: the average earning capacity impairment resulting from the service-connected disabilities. Oral Arg. at 33:42.

Currently, average impairment in earning capacity is not a clearly defined standard. The Secretary suggests that requiring the Board to review the Director's decision and consider the average impairment in earning capacity puts the Board in an impossible situation because the Board lacks the expertise the Director has necessary for assigning an extraschedular rating. The fact that the Secretary has not elected to provide more guidance explaining how to ascertain the average impairment in earning capacity is neither uncommon[6] nor an adequate reason to isolate the Director's decision from the congressionally mandated Board review established in section 7104.[7] Manageable judicial standards do not require absolute clarity. Rather, all that is needed is a legal standard by which a court may measure the governmental action. Average impairment in earning capacity is the standard that forms the basis for the entire rating schedule. 38 U.S.C. § 1155. It is also a limiting principle restricting the Secretary's discretion in § 3.321(b). This is sufficient to establish a judicially manageable standard. Indeed, the Board reviews average impairment in earning capacity every day.

Moreover, as the Director's decision here illustrates, extraschedular consideration is not a question of opinion or discretion, but one of fact. In reaching his decision, the Director relied on the

---

[6] Despite repeated encouragement from this Court, VA has provided only limited guidance regarding the definition of "substantially gainful occupation" in § 4.16. *See Faust v. West*, 13 Vet.App. 342, 355 (2000) (recognizing that "the Secretary has yet to issue a clear definition of substantially gainful employment, despite the Court's encouragement to that effect" and subsequently offering a definition "for the purpose of dealing with the facts of this case"); *Moore (Robert) v. Derwinski*, 1 Vet.App. 356, 359 (1991) (calling for a clear definition of "unemployability" but declining to impose a Court-created rule).

[7] Unlike TDIU where the rating assigned under § 4.16 is set at 100%, here, the rating is determined based on the average impairment in earning capacity resulting from the unique disability picture. Because the nature of extraschedular consideration requires that the disability picture be unique and not contemplated by the rating schedule, there logically is no guidance as to the *specific* rating that should be assigned in any particular case. *See Floyd v. Brown*, 9 Vet.App. 88, 97 (1996).

April 2010 examination, noting Mr. Kuppamala's "severe symptoms of about 14 bowel movements a day" and that he occasionally has to leave an x-ray session to use the bathroom and also experiences episodes of incontinence. R. at 45. The Director concluded that the rating schedule did not contemplate the frequency of Mr. Kuppamala's symptoms and that the frequency of his symptoms "presents the exceptional or unusual disability picture affecting his ability to perform his occupational duties as an X-ray technician causing marked interference with employment." *Id.* Clearly, this is a fact-driven analysis assessing a veteran's unique disability picture and whether that picture results in an average impairment in earning capacity significant enough to warrant an extraschedular rating. Therefore, the Court finds that where, as here, the statute and regulation provide "a judicially manageable standard limiting the Secretary's discretion, the Board *must* review the Secretary's decision to [e]nsure that it was made within the statutory or regulatory confines." *Werden*, 13 Vet.App. at 467.

*2. Policy Decision Argument*

Although there is a judicially manageable standard, the Secretary still argues that the plain language of the regulation – in particular the phrase "to accord justice" – precludes review by the Board because this language indicates that extraschedular consideration involves a policy decision. Oral Arg. at 16:04. He maintains that the purpose of § 3.321(b) was to provide, as a matter of equity, an additional rating in the exceptional case not contemplated by the rating schedule. *Id.* at 31:11. First, the Court notes that 38 U.S.C. § 503 provides the authorization for equitable relief, yet the Secretary does not cite this statute or argue that § 3.321(b) was promulgated under its authority. *See Darrow v. Derwinski*, 2 Vet.App. 303, 304 (1992) (distinguishing between grant of benefits based on Secretary's equitable authority under section 503(a) and grant of benefits based upon statutory entitlement).

Moreover, as noted above, there is a clear statutory mandate found in "§§ 511(a) and 7104(a) dictat[ing] that the Board acts on behalf of the Secretary in making the ultimate decision on claims and provides 'one review on appeal to the Secretary' of a question 'subject to decision by the Secretary' under § 511(a)." *Disabled Am. Veterans*, 327 F.3d at 1347 (quoting 38 U.S.C. §§ 511(a) and 7104(a)). There is no legitimate dispute that § 3.321(b) affects the provision of benefits, rendering it a section 511(a) issue that is subject to the Board's jurisdiction. *Wages v. McDonald*,

9

27 Vet.App. 233, 237 (2015); *Bates*, 398 F.3d at 1362; 38 U.S.C. § 511(a). Therefore, even if § 3.321(b) could be read to limit the Board's scope of review, that interpretation would contradict the clear congressional intent in 38 U.S.C. § 7104(a) that the Board shall be the final authority on all benefits decisions. *Wages*, 27 Vet.App. at 236; *Disabled Am. Veterans*, 327 F.3d at 1347; 38 C.F.R. § 20.101(a)(1) (2015) (providing that the Board has jurisdiction over issues such as "[e]ntitlement to and benefits resulting from[ ] service-connected disability" under 38 U.S.C. chapter 11); 38 C.F.R. § 20.101(b) (contrasting "adjudicative matters," which the Board has authority to review, with "medical determinations," which the Board does not have authority to review).

### 3. Reasons or Bases

The Secretary suggests that the Board's review of the Director's decision is limited to merely noting the fact that the Director made a decision. Oral Arg. at 21:00. He argues that an extraschedular award is part of the regular claims process because the relevant "fact" the Board must note "is simply what the Director determined." Oral Arg. at 32:57. The Board is the final authority on benefits decisions yet the review the Secretary endorses is nothing more than lip service to this principle. The Court is perplexed by the Secretary's assertion that even if the Director made a clear factual misstatement in his decision, the veteran would have no recourse but to seek private relief or a change in law from Congress. Oral Arg. at 23:20. "The purpose of appellate review . . . is to ensure that the facts found and laws applied were appropriate." *Werden*, 13 Vet.App at 467. An inaccurate or incomplete decision from the Director frustrates that review. Accordingly, the Court further finds that to allow for a proper review, the Board must have before it an actual decision complete with a statement of reasons or bases. 38 U.S.C. § 5104 ("In any case where the Secretary denies a benefit sought, the notice . . . shall also include (1) a statement of the reasons for the decision, and (2) a summary of the evidence considered by the Secretary.").

Contrary to the Secretary's assertion at oral argument, the Director may not issue a decision assigning an extraschedular rating that merely states that "an extraschedular rating of 10% is warranted." Oral Arg. at 37:38. When the Director acts in the context of extraschedular ratings, he is taking the place of an RO adjudicator. *Wages*, 27 Vet.App. at 238 ("In short, the Director's decision is no different than an RO's decision in terms of its effect on the Board's statutory jurisdiction and the Board's standard of review.") (citing *Disabled Am. Veterans*, 419 F.3d at 1319

10

("[T]he Board conducts de novo review of [RO] proceedings based on the record.")). Extraschedular consideration under § 3.321(b) is part of the claims process even though there are additional procedural requirements – referral to the Director – that must be followed. *Floyd*, 9 Vet.App. at 96. The actual review of the matter is done for the first time by the Secretary. *Anderson*, 22 Vet.App. at 428. Any award made by the Director is then implemented by the RO. *Id.* at 429. Thus, the Director's decision is "in essence the de facto decision of the agency of original jurisdiction. . . . It is simply a decision that is adopted by the RO and reviewed de novo by the Board." *Wages*, 27 Vet.App. at 239. Accordingly, the Director must comply with the same requirements as the RO that will implement the decision and provide a statement of reasons for the decision and a summary of the evidence considered. 38 U.S.C. § 5104. Knowing the facts and the law that the Director relied on, the Board may then dutifully review whether the Director's decision was in accordance with the evidence of record and the requirements of § 3.321(b).

## B. Board's Authority To Assign an Extraschedular Rating

Having determined that the Board has authority to review the entirety of the Director's decision, the Court next addresses what remedy the Board may provide. Specifically, may the Board assign an extraschedular rating? For the reasons that follow, the Court holds that it may.

The Secretary argues that the Board may not assign an extraschedular rating because the Board lacks the expertise necessary to review the Director's assessment of the average impairment in earning capacity resulting from the individual's disability picture. This argument is out of step with the Court's caselaw specifically addressing § 3.321(b)(1).

In *Floyd v. Brown*, the Board sua sponte granted the appellant a 10% extraschedular evaluation. 9 Vet.App. at 94. Rather than finding, as the Secretary now argues, that the Board may neither assign nor review the assignment of an extraschedular evaluation, the Court, relying on sections 511(a) and 7104(a), found that § 3.321(b)(1) precludes the Board from "*assigning* such a rating *in the first instance*." *Id*. at 94-95. Prohibiting the Board from assigning an extraschedular rating in "the first instance" logically suggests that once the Director has made an initial determination, the Board may assign an extraschedular rating thereafter.

This conclusion is further supported by *Anderson v. Shinseki*. In *Anderson*, the Board reviewed the Director's denial of an extraschedular rating. 22 Vet.App. at 426-27. The Court

expressly rejected the appellant's efforts to parse the elements of *Thun* into individual binding decisions, clarifying that each step of the three-step inquiry announced in *Thun* is an "element[] that must be established before an extraschedular rating can be awarded and . . . they are reviewable by the Board." *Id.* at 427. Also relying on § 7104(a), the Court in *Anderson* stated that "the Board is permitted to review the entirety of the proceedings below." *Id.* at 428. Notably, although in *Anderson*, the Director ultimately denied an extraschedular rating, there is no discernable distinction between the Board's ability to review a denial of an extraschedular rating and review of an award of an extraschedular rating. *Id.* (noting that "the Board's review of the RO's decision that Mr. Anderson was not entitled to a hearing loss greater than 10% *included a review of whether an extraschedular rating was warranted*") (emphasis added). The only clear limitation on the Board's review is the Director's specific regulatory authority to approve extraschedular awards in the first instance. *Id.*

Despite an opportunity to do so, neither *Floyd* nor *Anderson* adopted an interpretation of §3.321(b)(1) that sets the Director's decision outside the Board's jurisdiction under sections 511(a) and 7104(a) to make the final decision for the Secretary. Instead, these decisions only preclude the Board from assigning an extraschedular evaluation *in the first instance*. Once the Director has conducted his review, as *Anderson* clarified, all three elements of *Thun* are reviewable by the Board. Thus, *Floyd* and *Anderson* support a finding consistent with *Wages* that the Board reviews the Director's extraschedular decision de novo, and may, therefore, assign an extraschedular rating.[8] *Wages*, 27 Vet.App. at 239.

Additionally, the Court disagrees that the Board lacks the requisite experience necessary to assign an extraschedular rating. As noted above, the entire rating schedule is governed by the average impairment in earning capacity resulting from service-connected disabilities. 38 U.S.C. § 1155. Thus, in every decision involving the rating schedule, the Board considers the average

---

[8] The Court notes that language in *Thun v. Shinseki*, 572 F.3d 1366 (Fed. Cir. 2009) may suggest that only the Under Secretary for Benefits or the Director may assign an extraschedular award to the Under Secretary and the Director. *Id.* at 1370. However, the specific argument in *Thun* involved whether the RO made a threshold inquiry prior to referring the matter for extraschedular consideration. *Id.* The Federal Circuit was focused on the authority of the RO, the Board, and the Director with respect to steps one and two of *Thun*. Therefore, *Thun* did not consider each entity's authority under step three and *Floyd* and *Anderson* are still controlling precedent.

impairment in earning capacity. Granted, the rating schedule sets predetermined ratings for most disabilities. But, in many instances, the Board's review is not solely limited to a mechanical application of the rating schedule. 38 C.F.R. § 4.21 (2015) (rating regulations do not require that all cases show all findings specified by the rating schedule; coordination of rating with impairment of function expected in all instances). For example, when a veteran's condition is not listed in the rating schedule, the Board may assign a rating by analogy under 38 C.F.R. § 4.20 (2015). Additionally, in the context of psychiatric disabilities under 38 C.F.R. § 4.130 (2015), the Court has held that the symptoms listed in DC 9411 are "not intended to constitute an exhaustive list, but rather are to serve as examples of the type and degree of symptoms, or their effects, that would justify a particular rating." *Mauerhan v. Principi*, 16 Vet.App. 436, 442 (2006). The Board is required to "consider all symptoms of a claimant's condition that affect the level of occupational and social impairment," not just those listed in the regulation. *Id.* at 443. As "symptomatology should be the fact-finder's primary focus when deciding entitlement to a given disability rating," the Board must go beyond the criteria in the schedule to determine what level of impairment to earning capacity results from an appellant's unique symptoms. *Vazquez-Claudio v. Shinseki*, 713 F.3d 112, 117 (Fed. Cir. 2013).

Finally, although the Secretary argues that the Court's holding in this case will render § 3.321(b) unworkable and undermine the Secretary's intention to provide extraschedular ratings "to accord justice," this argument is without merit. As discussed above, despite invoking the word "justice," extraschedular consideration under § 3.321(b) is a decision governed by law, with discernable standards, and not equity. If the Secretary had intended extraschedular ratings to be equitable decisions, the statutory authority for the regulation would come from 38 U.S.C. § 503, which allows the Secretary to provide equitable relief. Instead, § 3.321(b)'s authority derives from section 1155, placing it within the normal VA benefits claims process. *See Floyd*, *supra*; *see also* VA. Gen. Couns. Prec. Op. 6-96 (noting that extraschedular and TDIU ratings "should be viewed as a component of the increased-rating claim rather than a separate claim").

As to the Secretary's assertion that extraschedular ratings are a policy consideration, the policy decision was made when the Secretary promulgated the regulation allowing for extraschedular ratings to account for exceptional circumstances. This delegation serves multiple purposes. First,

13

it allows the Director to exercise his expertise in the first instance. While not evidence, this decision may serve to inform the Board's review. *See Wages*, 27 Vet.App. at 239 (finding that the Director's decision is not evidence). Additionally, limiting the initial grant of an extraschedular rating to the Director instead of the many ROs across the country provides a degree of uniformity over these exceptional decisions. Referral also keeps the Director apprised of the number and type of unique disability cases allowing the Secretary to satisfy his obligation to, "from time to time[,] readjust th[e] schedule of ratings in accordance with experience." 38 U.S.C. § 1155. Therefore, the Board's ability to review the Director's decision and assign a rating *after* the Director has had an opportunity to review the claim does not render referral to the Director meaningless. *See Wages*, 27 Vet.App. at 238. Rather, it allows the Director to exercise his expertise while preserving the Board's appellate authority to remedy any error in the Director's initial decision. *See Anderson*, 22 Vet.App. at 431 (Schoelen, J., *concurring*) (expressing concern that although the Director is uniquely suited to determine what extraschedular rating is appropriate, isolating the Director's decision from review by the Board would frustrate the Board's appellate authority under section 7104(a)). Consequently, this argument is insufficient to overcome the clear statutory directive that the Board shall be the final agency authority on all benefits decisions. *See* 38 U.S.C. § 7104(a). Based on the foregoing, the Court concludes that the clear import of both the statutes establishing the Board's jurisdiction and the Court's prior caselaw lead to only one conclusion: The Board reviews the entirety of the Director's decision de novo and is thus authorized to assign an extraschedular rating when appropriate.

## C. The Decision on Appeal

Having found that the Board has the authority to review the Director's entire decision de novo, the Court will now address the Board decision on appeal. The Board must provide a statement of the reasons or bases for its determination, adequate to enable an appellant to understand the precise basis for the Board's decision as well as to facilitate review in this Court. 38 U.S.C. § 7104(d)(1); *see Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990). To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. *See*

14

*Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd*, 78 F.3d 604 (Fed. Cir. 1996) (table); *Gilbert*, 1 Vet.App. at 57.

Ulcerative colitis is rated under DC 7323, which provides for a 100% disability rating where the condition is "[p]ronounced; resulting in marked malnutrition, anemia, and general debility, or with serious complication as liver abscess." 38 C.F.R. § 4.114, DC 7323 (2015). Where the condition is "[s]evere; with numerous attacks a year and malnutrition, the health only fair during remissions" the condition is evaluated at 60%. *Id.* Mr. Kuppamala is rated under DC 7329, which applies to resection of the large intestine and provides for a maximum 40% disability rating for "severe symptoms, objectively supported by examination findings." 38 C.F.R. § 4.114, DC 7329. He has the maximum rating under DC 7329.

In the decision on appeal, the Board discussed Mr. Kuppamala's frequent bowel movements and bowel incontinence that prevented him from working alone or in specialty clinics and caused him to miss work. R. at 6. The Board then summarized the Director's decision, noting the Director's finding that the rating schedule was inadequate because it did not address the frequency of Mr. Kuppamala's symptoms and assigning a 10% extraschedular rating in addition to the veteran's 40% schedular rating, for a combined 50% disability rating. *Id.* The Board then summarily concluded that the 50% disability rating was appropriate. *Id.* As Mr. Kuppamala points out, the Board did not discuss the VA medical examinations or address his symptoms of loss of appetite, weight loss, chronic fatigue, problems with memory and concentration, and lower back and leg pain – all of which he reports affect his ability to work. Appellant's Br. at 11-12.

As demonstrated by the Board's summary, the Director's decision focused on the frequency of his bowel movements. R. at 45-46. Neither the Director nor the Board addressed Mr. Kuppamala's symptoms – including weight loss, loss of appetite, disturbed sleep, fatigue, memory and concentration problems, and low back and leg pain – that are part of his complete disability picture. R. at 6. Mr. Kuppamala argues that he suffers from "*more than* frequent diarrhea" and that had the Board addressed this evidence, it may have found that the Director's analysis was incomplete. Appellant's Reply Br. at 3. The Secretary even acknowledged that this evidence was a "critical part of the analysis." Oral Arg. at 28:45. The Court agrees that the Board needed to discuss this evidence. *Floyd*, 9 Vet.App. at 96-97 (noting that when an appellant appeals an extraschedular

rating to the Board, "the Board will be required to articulate its findings of fact and sufficient reasons and bases on the extraschedular consideration issue"). The Board's limited analysis frustrates the Court's ability to review the Board's assessment of Mr. Kuppamala's disability picture. *Cf. Anderson*, 22 Vet.App. at 429 (finding that "because the Board's description of [the appellant's] disability picture presented by the record is incomplete, its analysis of whether that disability picture is adequately contemplated by the rating schedule is necessarily flawed); *see also Allday* and *Caluza*, both *supra*. Accordingly, the Court will remand this matter for proceedings consistent with this decision.

On remand, the appellant is free to submit additional evidence and argument on the remanded matters, and the Board is required to consider any such relevant evidence and argument. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002); *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). The Court has held that "[a] remand is meant to entail a critical examination of the justification for the decision." *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991). The Board must proceed expeditiously, in accordance with 38 U.S.C. § 7112 (requiring Secretary to provide for "expeditious treatment" of claims remanded by Court).

## IV. CONCLUSION

Upon consideration of the foregoing, the June 27, 2014 Board decision is VACATED and REMANDED for further proceedings consistent with this decision.