Citation Nr: 1829312 
Decision Date: 05/25/18 Archive Date: 06/12/18

DOCKET NO. 12-21 239 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Columbia, South Carolina


THE ISSUE

Entitlement to an evaluation in excess of 10 percent prior to August 29, 2016 for right third finger disability on an extra-schedular basis.


REPRESENTATION

Veteran represented by: The American Legion


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

M. Franklin, Associate Counsel

INTRODUCTION

The Veteran served on active duty from March 1979 to June 1979, and also served in the Army National Guard from May 28, 1983, to June 1, 1983. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a December 2011 rating decision by the Columbia, South Carolina, Regional Office (RO) of the Department of Veterans Affairs (VA). In June 2014, the Veteran testified at a personal hearing before the undersigned Veterans Law Judge. A copy of the transcript of that hearing is of record. 

Also of record is a July 2016 rating decision that denied the Veteran's claims for service connection for bilateral hearing loss and tinnitus. He perfected his appeal of these claims by filing a VA Form 9 in January 2018. The agency of original jurisdiction (AOJ) has not yet certified the appeal to the Board. There is also no indication that the Veteran's request for a personal hearing (Travel Board) on these issues has been fulfilled. Accordingly, the Board will defer a decision on these claims pending further action by the AOJ.

This appeal was most recently remanded by the Board in July 2016. The July 2016 remand noted that during the Veteran's June 2014 hearing he indicated that he had pain in his right hand, right arm, right shoulder, and neck (see: pages 6-7 of the June 2014 hearing transcript), all secondary to his service connected right third finger disability. The issues were referred to the Agency of Original Jurisdiction (AOJ) for appropriate action, but there is no indication of any subsequent VA action as to these matters in the record. 

In April 2017, the Veteran submitted a waiver of Agency of Original Jurisdiction (AOJ) consideration of new evidence pursuant to 38 C.F.R. § 20.1304.





FINDINGS OF FACTS

1. The symptoms of the residuals of a fracture of the Veteran's right middle finger are analogous to amputation at the metacarpal joint.

2. The residuals of the fracture of the Veteran's right middle finger is not shown to warrant an extra-schedular evaluation.


CONCLUSIONS OF LAW

1. The criteria for a 20 percent disability rating, but no higher, for the service-connected right middle finger disability prior to August 29, 2016 have been met. 38 U.S.C. § 1155 (2012); 38 C.F.R. § 4.118, Diagnostic Codes (DCs) 5154, 5226, 5229 (2017).

2. The criteria for an extraschedular evaluation for the service-connected right middle finger have not been met. 38 U.S.C. § 1155 (2012); 38 C.F.R. § 4.118, Diagnostic Codes (DCs) 5125, 5154, 5226, 5229 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The matter was Remanded in July 2016 for the purpose of securing updated VA treatment records, obtaining a medical opinion, and referring the claim to the Director of Compensation and Pension Services. VA treatment records have been obtained and VA examination opinions were procured. A Compensation and Pension Services opinion was provided in January 2017. The Board finds that there was substantial compliance with the July 2016 remand directives. See Stegall v. West, 11 Vet. App. 268 (1998); D'Aries v. Peake, 22 Vet. App. 97, 104-05 (2008)).
Since the 2016 Remand, neither the Veteran nor his representative has raised any issues with the duty to notify or duty to assist. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board...to search the record and address procedural arguments when the veteran fails to raise them before the Board."); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to a duty to assist argument).

Disability evaluations are determined by the application of the Schedule for Rating Disabilities, which assigns ratings based on the average impairment of earning capacity resulting from a service-connected disability. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

In order to evaluate the level of disability and any changes in condition, it is necessary to consider the complete medical history of the Veteran's condition. Schafrath v. Derwinski, 1 Vet.App. 589, 594 (1991). However, where an increase in the level of a service-connected disability is at issue, the primary concern is the present level of disability. Francisco v. Brown, 7 Vet.App. 55 (1994).

Nevertheless, the Board acknowledges that the Veteran may experience multiple distinct degrees of disability that might result in different levels of compensation from the time the increased rating claim was filed until a final decision is made. Hart v. Mansfield, 21 Vet. App. 505 (2007). The analysis in the following decision is therefore undertaken with consideration of the possibility that different ratings may be warranted for different time periods.

In a June 1997 rating decision, the Veteran was granted service connection for fracture, right third finger and assigned a noncompensable rating effective January 28, 1997 under Diagnostic Code 5229. Subsequently, in a January 2011 rating decision, the Veteran's service-connected right third finger condition was increased to 10 percent disabling effective October 9, 2008 (receipt of claim). This award is the maximum disability evaluation allowed under a long finger condition (right third finger) under Diagnostic codes 5229. 

The Veteran filed a notice of disagreement and during the pendency of this claim, the RO increased the 10 percent rating for the Veteran's right third finger condition to 70 percent, retroactive to August 29, 2016 (date of VA examination) under diagnostic code (DC) 5125. The RO noted that the Veteran's right third finger condition was previously rated under DC 5229. The RO merged the prior 10 percent disability rating under DC 5229 into the 70 percent disability rating under DC 5125.

A Veteran is presumed to be seeking the highest possible rating, unless he expressly indicates otherwise. See AB v. Brown, 6 Vet. App. 35, 39 (1993). Here, the Veteran's representative has expressly indicated in his April 17, 2018 brief that the Veteran is not seeking a disability rating in excess of 70 percent for his right third finger condition after August 29, 2016. 

Pursuant to Diagnostic Code 5226, a 10 percent rating is the maximum warranted for favorable or unfavorable ankylosis of the long finger (right third finger condition). Similarly, pursuant to Diagnostic Code 5229, a 10 percent rating is the maximum warranted for limitation of motion of individual digits which includes the Veteran's right third finger condition. 

With respect to amputation, under Diagnostic Code 5154, disability ratings are assigned for amputation of the long finger. A 10 percent rating is assigned without metacarpal resection. A 20 percent rating is assigned with metacarpal resection.

The Veteran was afforded two VA examinations prior to August 29, 2016. The 2011 and 2015 VA examinations revealed limitation in motion and reduced muscle strength of the Veteran's right third finger. The examiners concluded that functioning is not so diminished that amputation with prosthesis would equally serve the Veteran. The examinations also indicated that the Veteran does not have ankylosis of his right third finger. 



Prior to August 29, 2016, the Veteran received a 10 percent disability rating under Diagnostic Codes 5229, which is the maximum disability rating assigned for limitation of motion for his right middle finger. A higher rating is not applicable under Diagnostic Codes 5226 or 5229 on a schedular basis. 

However, while the examiners determined that amputation of the finger would not be favorable to the Veteran, little rationale was given for this conclusion. The examiners also did not comment on the Veteran's complaints of functional loss of that finger. The Veteran has consistently stated that the residuals of his service-connected right finger disability severely affect his daily life. He states that he has no functional use of the finger. Accordingly, and resolving all doubt in his favor, the Board will assign the maximum 20 percent rating allowable for amputation of the right long finger. There is no higher rating available. See 38 C.F.R. § 4.68, the combined rating for disabilities of an extremity shall not exceed the rating for the amputation at the elective level, were amputation to be performed.

With the Veteran in receipt of the maximum schedular rating for any disability of the single long finger, the Board will consider the Veteran's service-connected right middle finger condition in excess of 20 percent prior to August 29, 2016 on an extra- schedular basis.

VA laws require that consideration be given to whether an assigned schedular evaluation is inadequate, thus requiring that the RO refer a claim to the Under Secretary for Benefits or the Director, Compensation and Pension Service, for consideration of "an extra-schedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities." 38 C.F.R. § 3.321(b) (1) (2015); Barringer v. Peake, 22 Vet. App. 242, 243-44 (2008) (noting that the issue of an extra-schedular rating is a component of a claim for an increased rating and referral for consideration must be addressed either when raised by the Veteran or reasonably raised by the record). 

The matter was referred for extra-schedular evaluation consideration in December 2014 and July 2016. Although the Director of the Compensation Service denied the assignment of a higher rating on an extra-schedular basis, the Board is not precluded from reviewing the claim and assigning an extra-schedular rating commensurate with the average earning capacity impairment due exclusively to the service-connected disability subsequent to such determinations. See Floyd v. Brown, 9 Vet. App. 88 (1996); Thun v. Peake, 22 Vet. App. 111, 115 (2008); see also Kuppamala v. McDonald, 27 Vet. App. 447 (2015) (Board reviews the Director's extraschedular decision de novo, and may, therefore, assign an extraschedular rating after the Director's decision).

During the December 2011 examination, the Veteran stated he has not worked since receiving his 10 percent increased evaluation for his service connected right finger fracture. The Veteran described his finger as useless and making it impossible to raise his right hand due to pain, to hold a cup, to eat with his right hand, or to open or close it. He even questioned whether the overall function of the hand would improve if the finger were amputated. This exam showed limited range of motion with pain noted. However, the examiner did not opine that this condition affects employment; in fact, the examiner stated it was believed the Veteran did not put forth full effort throughout the exam. 

During the March 2015 examination, it is noted there is pain on palpation of the finger as well as reduction in flexion and extension of the third finger of the right hand at the MCP, PIP and DIP joints. The examiner specifically stated this condition is not analogous to an amputation of the right third finger with metacarpal resection. The Veteran was able to extend and flex finger albeit with limitation. These examinations fail to show that the Veteran's condition causes marked interference with employment or frequent periods of hospitalization.

VA treatment records and records from the SSA note the Veteran has been seen for finger pain. Records from the SSA confirm that the Veteran has a diagnosis of a cervical fracture. VA treatment note dated July 2011 notes complaints that the Veteran is losing strength in his hand, but fail to show any signs of marked interference or frequent hospitalizations.

When comparing the Veteran's disability picture with the symptoms contemplated by the Rating Schedule, the Board finds that the objective manifestations of the service-connected right long finger are congruent with the disability picture represented by the disability rating assigned herein - analogous amputation at the metatarsal joint. The examiners have noted the Veteran's manifest symptoms and impairment due to thia disorder. The rating criteria reasonably describe his disability level and symptomatology. In this case, after applying the benefit of the doubt under of Mittleider v. West, 11 Vet. App. 181 (1998), there are no additional service-connected disabilities that have not been attributed to a specific service-connected condition. The claim for referral for extra-schedular rating consideration must be denied.

Finally, consideration has been given to whether it would be appropriate to assign a 70 percent disability rating for loss of use of the right hand prior to August 29, 2016. The Veteran was afforded an August 2016 Hands and Finger VA examination. The examiner determined that the Veteran had current symptoms of complex regional pain syndrome (CRPS) and noted that for all purposes lost the use of his right hand due to development of a chronic pain syndrome; and, as indicated, the Veteran's disability rating was increased to 70 percent under Diagnostic Code 5125 effective August 29, 2016 (the date of the examination).

Pursuant to Diagnostic Code 5125, a 70 percent rating is the maximum warranted for loss of use of the major hand. The evidence of record indicates that the Veteran is right hand dominant. 

Regarding the period prior to August 29, 2016, the examiner noted that the earliest VA examination concerning the Veteran's hand was in 2009, and stated that it appeared as if he was developing CRPS at that time. However, the examiner did not find that the Veteran experienced loss of use of his right hand in August 2009. The Board notes that the 2009 VA examiner examined and assessed the Veteran's right middle finger in person and found that the Veteran had pain, but the limitation in motion did not meet the schedular criteria for a compensable rating. The 2009 examiner did not conclude that the Veteran had CRPS or no use of his right hand. 

The Board also notes that VA requested two supplemental medical opinions from the August 2016 examiner in order to obtain clarification regarding CRPS and its relationship to loss of the use of the Veteran's right hand. In a September 2016 medical opinion, the examiner stated that the it is at least as likely as not (50 percent or greater probability) that the Veteran's service connected injury to his right long finger was sufficient to trigger symptoms of CRPS. He did not, however, state that his current CRPS symptoms indicated no use of the Veteran's right hand retroactively. The RO requested an additional medical opinion to specifically address whether the CRPS condition alone causes loss of the use of the hand. 

The examiner explained in a December 2016 addendum medical opinion, that the cause of CRPS isn't clearly understood and that literature does not specify the amount of time between the injury and the appearance of CRPS. He noted that if CRPS isn't diagnosed and treated early, the disease may progress to tissue wasting (atrophy) and muscle tightening (contracture) and this may lead to a condition in which the hand and fingers or foot and toes contract into a fixed position. However, the examiner reported that the Veteran is still exclusive in the pain phase. The examiner emphasized that the Veteran's CRPS had not yet progressed to atrophy or contracture, but that it was at risk for doing so. Although the examiner initially suggested that the Veteran experienced loss of use of his right hand during the August 2016 examination, he did not repeat that finding in the September 2016 or December 2016 supplemental medical opinions. He instead noted that the current symptoms of the Veteran's CRPS, if such were even established, are limited to pain and not the more severe and debilitating atrophy and contracture symptoms. 

Moreover, the examiner does not conclude in any opinion that the Veteran retroactively does not have use of his right hand due to CRPS. The 2011 and 2015 examiners, who examined the Veteran in person, determined that functioning is not so diminished that amputation with prosthesis would equally serve the Veteran. There was no findings of CRPS and/or loss of use of the hand. To the contrary, throughout the entire period on appeal the Veteran has had 3/5 grip strength. Such belies the notion of the Veteran having loss of use of the hand analogous to amputation. Thus, the Board assigns limited probative value to the 2016 VA opinion as it relates to the Veteran's loss of use of his right hand. 



ORDER

Entitlement to an evaluation 20 percent, but no higher, for right third finger disability prior to August 29, 2016, is granted.




____________________________________________
MICHAEL A. HERMAN
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs