Citation Nr: 1801842 
Decision Date: 01/10/18 Archive Date: 01/23/18

DOCKET NO. 14-12 571 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Phoenix, Arizona


THE ISSUES

1. Entitlement to a total disability rating based on individual unemployability (TDIU).

2. Entitlement to an initial rating in excess of 40 percent for degenerative changes of the left wrist on an extra-schedular basis.


ATTORNEY FOR THE BOARD

B. Berry, Counsel


INTRODUCTION

The Veteran served on active duty from June 2005 to September 2011.

These matters come to the Board of Veterans' Appeals (Board) on appeal from a rating decision dated in March 2011 by the Department of Veterans Affairs (VA) Regional Office (RO) in Providence, Rhode Island, which, in pertinent part, granted service connection for degenerative arthritic changes of the left wrist (non-dominant) status post un-united left scaphoid fracture with sclerosis and post-traumatic lunate avascular, and assigned a 20 percent rating, effective September 28, 2011. Jurisdiction was then transferred to the RO in Phoenix, Arizona. In February 2014, the RO granted an increased rating for the left wrist disability of 40 percent, effective January 22, 2014.

In October 2015, the Board expanded the appeal to include the matter of entitlement to a TDIU, noting that it was part of the Veteran's initial rating claim for a left wrist disability (consistent with Rice v. Shinseki, 22 Vet. App. 447 (2009)). At that time, the Board granted a 40 percent disability rating, but no higher, for degenerative changes of the left wrist, effective September 28, 2011 and remanded the issues of entitlement to an initial rating in excess of 40 percent on an extra-schedular basis and entitlement to a TDIU to the agency of original jurisdiction (AOJ) for further development. After accomplishing further development, the AOJ continued the denial of each claim (as reflected in the September 2016 supplemental statement of the case (SSOC)) and returned these matters to the Board for further appellate consideration.

The issue of entitlement to an initial rating in excess of 40 percent for degenerative changes of the left wrist on an extra-schedular basis is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

The preponderance of the evidence shows that the Veteran's service-connected disabilities do not preclude him from securing and following substantially gainful employment.




CONCLUSION OF LAW

The criteria for a TDIU have not been met. 38 U.S.C. § 1155 (2012); 38 C.F.R. §§ 3.341, 4.1, 4.15, 4.16 (2017).


REASONS AND BASES FOR FINDING AND CONCLUSIONS

I. Procedural Considerations

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information and medical or lay evidence that is necessary to substantiate the claim. 38 U.S.C. § 5103(a)(2012); 38 C.F.R. § 3.159(b) (2017). In accordance with 38 C.F.R. § 3.159(b)(1), proper notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. Such notice should also address VA's practices in assigning disability evaluations and effective dates for those evaluations. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). While the required notice should be furnished prior to the issuance of the appealed rating decision, any initial errors of notice will not be prejudicial if: 1) corrective actions (e.g., issuance of a post-adjudication notice letter containing the required information) are taken, and 2) the appeal is readjudicated (e.g., in a Supplemental Statement of the Case). See Mayfield v. Nicholson, 499 F.3d 1317 (Fed. Cir. 2007). 

Regarding the Veteran's claim for TDIU, a letter dated in March 2016 satisfied the duty to notify provisions. Specifically, the letter informed the Veteran of what evidence was necessary to substantiate a claim for TDIU. The letter notified the Veteran of his and VA's respective duties for obtaining evidence. 

VA also has a duty to assist the Veteran with the development of facts pertinent to the appeal. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c). This duty includes the obtaining of "relevant" records in the custody of a Federal department or agency under 38 C.F.R. § 3.159(c)(2), as well as records not in Federal custody (e.g., private medical records) under 38 C.F.R. § 3.159(c)(1). VA will also provide a medical examination if such examination is determined to be "necessary" to decide the claim. 38 C.F.R. § 3.15(c)(4).

In this case, VA has fulfilled its duty to assist the Veteran in making reasonable efforts to identify and obtain relevant records in support of the issue on appeal. The claims file contains service treatment records, VA treatment records, and VA examinations dated in March 2011 and January 2014.

The Board remanded this claim in October 2015 to provide notice to the Veteran of what is necessary to substantiate a claim for TDIU, identify his employment history since service, and obtain a vocational assessment and opinion to determine the impact of the Veteran's service-connected disabilities on his ability to maintain gainful employment. A March 2016 letter was sent to the Veteran that notified him of how to substantiate a claim for TDIU and asked the Veteran to complete the enclosed VA Form 21-8940 to list his employment history since service. The Veteran did not respond to the letter to include completing and returning VA Form 21-8940. The Board notes that the Veteran was not provided with an examination and medical opinion to determine the impact his service-connected disabilities have on his ability to obtain and maintain gainful employment as the evidence of record reveals that the Veteran was currently employed full time. In this case, there has been substantial compliance with underlying purpose of the remand, which was to determine whether the Veteran was able to obtain and sustain substantially gainful employment and the RO obtained adequate evidence with respect to such issue. See Stegall v. West, 11 Vet. App. 268, 271 (1998) (holding that a remand by the Board confers upon the Veteran, as a matter of law, the right to compliance with its remand instructions); but see also D'Aries v. Peake, 22 Vet. App. 97, 105 (2008) (holding that only "substantial" rather than strict compliance with the Board's remand directives is required under Stegall); accord Dyment v. West, 13 Vet. App. 141, 146-47 (1999).

The Veteran has not identified, and the record does not otherwise indicate, any other existing, pertinent evidence that has not been obtained. The record also presents no basis for further development to create any additional evidence to be considered in connection with the matters currently under consideration. Under these circumstances, the Board finds that the Veteran is not prejudiced by appellate consideration of the claims on appeal at this juncture, without directing or accomplishing any additional notification and/or development action.

II. Criteria and Analysis for TDIU Claim

The Veteran filed a notice of disagreement in March 2012 to the initial rating assigned for degenerative arthritic changes of the left wrist in the March 2011 rating decision. In an October 2015 decision, the Board determined that the issue of entitlement to a TDIU was raised based on the evidence of the record as part of the initial rating claim.

Total disability will be considered to exist when there is present any impairment of mind or body, which is sufficient to render it impossible for the average person to follow a substantially gainful occupation. 38 C.F.R. § 3.340 (2017). If the total rating is based on a disability or combination of disabilities for which the Schedule for Rating Disabilities provides an evaluation of less than 100 percent, it must be determined that the service-connected disabilities are sufficient to produce unemployability without regard to advancing age. 38 C.F.R. § 3.341 (2017). In evaluating total disability, full consideration must be given to unusual physical or mental effects in individual cases, to peculiar effects of occupational activities, to defects in physical or mental endowment preventing the usual amount of success in overcoming the handicap of disability and to the effects of combinations of disability. 38 C.F.R. § 4.15 (2016).

If the schedular rating is less than total, a total disability evaluation can be assigned based on individual unemployability if the Veteran is unable to secure or follow 
a substantially gainful occupation as a result of service-connected disability, provided that he has one service-connected disability rated at 60 percent or higher; or two or more service-connected disabilities, with one disability rated at 40 percent or higher and the combined rating is 70 percent or higher. 38 C.F.R. § 4.16(a). For the purpose of one 60 percent disability, or one 40 percent disability in combination, the following will be considered as one disability: (1) disabilities of one or both upper extremities, or of one or both lower extremities, including the bilateral factor, if applicable, (2) disabilities resulting from common etiology or a single accident, (3) disabilities affecting a single body system, e.g. orthopedic, digestive, respiratory, cardiovascular-renal neuropsychiatric, (4) multiple injuries incurred in action, or (5) multiple disabilities incurred as a prisoner of war. It is provided further that the existence or degree of non-service connected disabilities or previous unemployability status will be disregarded where the percentages referred to in this paragraph for the service-connected disability or disabilities are met and in the judgment of the rating agency such service-connected disabilities render the Veteran unemployable. 

Marginal employment shall not be considered substantially gainful employment. For purposes of 38 C.F.R. § 4.16, marginal employment generally shall be deemed to exist when a veteran's earned annual income does not exceed the amount established by the U.S. Department of Commerce as the poverty threshold for one person. Marginal employment may also be held to exist, on a facts found basis (includes but is not limited to employment in a protected environment such as a family business or sheltered workshop), when earned annual income exceeds the poverty threshold. Consideration shall be given in all claims to the nature of the employment and the reason for termination. 38 C.F.R. § 4.16(a).

The Veteran is service-connected for the following: degenerative arthritic changes of the left wrist (non-dominant), evaluated as 40 percent disabling; dysthymic disorder, evaluated as 30 percent disabling; limited supination and pronation of the right elbow (dominant) status post wrist fracture, evaluated as 20 percent disabling; post traumatic thoracolumbar strain, evaluated as 20 percent disabling; post traumatic whiplash syndrome, evaluated as 20 percent disabling; left lateral ankle sprain, evaluated as 20 percent disabling; right and left wrist surgical scar and right medial forearm scar, evaluated as 20 percent disabling; limited flexion of the left elbow (non-dominate) due to wrist fracture, evaluated as 10 percent disabling; limited motion of the right wrist (dominant), evaluated as 10 percent disabling; bilateral tinnitus, evaluated as 10 percent disabling; nocturnal gastroesophageal reflux disease, evaluated as 10 percent disabling; tension headaches, evaluated as 10 percent disabling; limited flexion of the right elbow (dominant), evaluated as noncompensable; limited extension of right elbow (dominate), evaluated as noncompensable; limited supination and pronation of the left elbow (non-dominate), evaluated as noncompensable; bilateral plantar fasciitis, evaluated as noncompensable; allergic conjunctivitis, evaluated as noncompensable; and tympanic membrane perforation, evaluated as noncompensable. The combined rating for these service-connected disabilities is 90 percent. Accordingly, the Veteran meets the schedular percentage requirements for entitlement to a TDIU. See 38 C.F.R. § 4.16(a).

The crucial inquiry for the Board is not whether the Veteran is able to pursue his profession of choice, or indeed any particular job. Instead, the Board must inquire as to whether the Veteran can secure and follow a substantially gainful occupation in a more general sense. See Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993). The fact that a veteran is unemployed is not enough. It must be determined that his service-connected disorders without regard to his advancing age make him incapable of performing the acts required by employment. Id. 

The overall evidence of record demonstrates that the Veteran's service-connected disabilities do not prevent him from obtaining and maintaining a substantially gainful occupation. In this regard, the RO sent a letter to the Veteran in March 2016 informing him that he may be entitled to compensation at the 100 percent rate if he is unable to secure and follow a substantially gainful occupation due to his service-connected disabilities. He was asked to complete, sign, and return VA Form 21-8940, Veterans Application for Increased Compensation Based on Unemployability. The claims file does not contain a completed VA Form 21-8940. Furthermore, there is no indication in the claims file that the Veteran asserts that his service-connected disabilities, to include service-connected degenerative changes of the left wrist, prevent him from obtaining or sustaining substantially gainful employment. 

A January 2014 VA examiner report shows that the examiner determined that the Veteran's left wrist disability impacts his ability to work in that he is unable to engage in anything involving the use of the left wrist. Nonetheless, an October 2015 VA treatment record documents that the Veteran reported that he was working at a job with less physical intensity due to hand injuries. A March 2016 VA mental health treatment record documents that the Veteran has a bachelor's degree in nuclear engineering and he was currently employed as a government contractor. The clinician noted that the Veteran had a stable job and he was financially stable. An August 2016 VA psychiatric progress note reveals that the was employed and he reported that work was going okay, but he felt it could be better. In the social history section it was noted that the Veteran was employed as a government contractor and works in finance management. 

The "applicable regulations place responsibility for the ultimate TDIU determination on the VA, not a medical examiner." Geib v. Shinseki, 733 F.3d 1350, 1354 (Fed. Cir. 2013). Moreover, whether a veteran could perform the physical and mental acts required by employment at a given time is an issue about which a lay person may provide competent evidence. Id. at 1354 ("neither the statute nor the relevant regulations require the combined effect [of disabilities] to be assessed by a medical expert"). Here, the lay and medical evidence reflect that the Veteran is able to perform the work of finance management full time. Moreover, there is no indication that this work is marginal in nature, i.e., that the Veteran's income does not exceed the relevant poverty threshold or that the job is in a protected environment, as the Veteran did not so indicate either in a written statement or on a VA Form 21-8940.

As the preponderance of the evidence of record shows that the Veteran currently works as a government contractor full time and the Veteran does not contend or the evidence otherwise show that this employment should be considered marginal, the Board concludes that the Veteran's service-connected disabilities do not prevent him from obtaining and maintaining substantially gainful employment. The benefit of the doubt doctrine is therefore not for application and entitlement to a TDIU is not warranted. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.

ORDER

Entitlement to a TDIU is denied.


REMAND

In an October 2015 decision, the Board granted an initial rating of 40 percent, but not higher, for degenerative changes of the left wrist, under Diagnostic Code 5214, effective September 28, 2011. The Board deferred the issue of whether referral for consideration of an initial rating in excess of 40 percent for degenerative changes of the left wrist on an extra-schedular basis is warranted as the Board determined that it was inextricably intertwined with the issue of entitlement to a TDIU. 

Disability ratings are typically determined by applying the criteria set forth in VA's Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. 38 U.S.C. § 1155 (2012); 38 C.F.R. §§ 3.321(a), 4.1 (2017). However, under certain circumstances VA may grant a disability rating outside of the rating schedule. According to VA regulation, in exceptional cases where schedular ratings are found to be inadequate, the RO may refer a claim to the Under Secretary for Benefits or the Director, Compensation Service, for consideration of "an extra-schedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities." 38 C.F.R. § 3.321(b)(1) (2016). An extra-schedular disability rating is warranted based upon a finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization that would render impractical the application of the regular schedular standards. See 38 C.F.R. § 3.321(b)(1); Fanning v. Brown, 4 Vet. App. 225, 229 (1993). 

Under Thun v. Peake, 22 Vet App 111 (2008), aff'd sub nom. Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009), there is a three step inquiry for determining whether a Veteran is entitled to an extra-schedular rating. First, the Board must determine whether the evidence presents such an exceptional disability picture that the available schedular evaluations for the service-connected disability are inadequate. Second, if the schedular evaluation does not contemplate the Veteran's level of disability and symptomatology and it is found inadequate, the Board must determine whether the claimant's disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate a Veteran's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director, Compensation Service to determine whether the Veteran's disability picture requires the assignment of an extra-schedular rating.

Furthermore, the United States Court of Appeals for the Federal Circuit (Federal Circuit) stated that "§ 3.321(b)(1) provide for referral for extra-schedular consideration based on the collective impact of multiple disabilities." Johnson v. McDonald, 762 F.3d 1362, 1365 (Fed. Cir. 2014). The Federal Circuit explained that an extra-schedular rating is warranted in an exceptional circumstance where the evaluation of the individual condition fails to capture all the service-connected disabilities experienced.

The Veteran's left (non-dominant) wrist disability is rated under 38 C.F.R. § 4.71a, Diagnostic Code (DC) 5214. Under DC 5214, favorable ankylosis in 20 to 30 degrees dorsiflexion warrants a 20 percent rating, in any other position except favorable warrants a 30 percent rating, and unfavorable ankylosis in any degree of palmar flexion, or with ulnar or radial deviation, warrants a 40 percent rating. A Note to DC 5214 provides that extremely unfavorable ankylosis will be rated as loss of use of hands under diagnostic code 5125.

In this case, the evidence reflects that the criteria in DC 5214 do not contemplate all of the symptoms of the Veteran's left wrist disability. Although the DC 5214 contemplates loss of use of the wrist, it does not adequately evaluate all of the Veteran's reported symptoms of weakness, stiffness, swelling, redness, giving way, lack of endurance, fatigability, deformity, tenderness, subluxation, and pain. Furthermore, the Veteran has undergone multiple hospitalizations for surgeries of the left wrist. 

Based on the foregoing, the Board finds that this issue should be referred to VA's Under Secretary for Benefits or Director of Compensation Service for consideration of the assignment of an extra-schedular rating, to include based on the combined effects of his service-connected disabilities. See Johnson v. McDonald, 762 F.3d 1362, 1365-66 (Fed. Cir. 2014) ("[t]he plain language of § 3.321(b)(1) provides for referral for extra-schedular consideration based on the collective impact of multiple disabilities"). A recent amendment to 38 C.F.R. § 3.321(b)(1) intended to address the holding of Johnson has not yet taken effect. See 82 Fed. Reg. 57830 (effective January 8, 2018). In this regard, the Board notes that the Court has held that it is improper for the Board to consider entitlement to an extra-schedular rating in the first instance. See Kuppamala v. McDonald, 27 Vet. App. 447, 456-57 (2015).

Accordingly, the claim for entitlement to an initial rating in excess of 40 percent for degenerative changes of the left wrist on an extra-schedular basis case is REMANDED for the following action:

1. Refer the claims file to the VA Under Secretary for Benefits or Director of Compensation Service for consideration of entitlement to an extra-schedular rating for degenerative changes of the left wrist, and based on the combined effects of his service connected disabilities.

2. If the benefits sought on appeal are not granted in full, issue a supplemental statement of the case; and return the appeal to the Board, if otherwise in order.

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).



____________________________________________
Jonathan Hager
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs