Citation Nr: 1755103 
Decision Date: 11/30/17 Archive Date: 12/07/17

DOCKET NO. 11-30 654 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Hartford, Connecticut


THE ISSUES

1. Entitlement to an initial rating in excess of 50 percent prior to December 5, 2016, and a rating in excess of 70 percent from December 5, 2016, for major depressive disorder. 

2. Entitlement to an effective date earlier than December 5, 2016 for the grant of entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU). 


REPRESENTATION

Appellant represented by: Robert V. Chisholm, Attorney


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

Jasmin C. Freeman, Associate Counsel


INTRODUCTION

The Veteran served on active duty in the United States Air Force from May 1969 to April 1972, including service in Vietnam. His awards and decorations included the National Defense Service Medal.

This matter is before the Board of Veterans' Appeals (Board) on appeal from May 2015 and April 2017 rating decisions of the Department of Veterans Affairs (VA) Regional Office in Hartford, Connecticut (RO). The May 2015 rating decision granted service connection for major depressive disorder and assigned a 50 percent disability rating, effective May 27, 2009, and the April 2017 rating decision granted entitlement to a TDIU, effective December 5, 2016.

In April 2013, the Veteran testified at a Board videoconference hearing before a Veterans Law Judge. A copy of the transcript has been associated with the claims file. In June 2015, VA notified the Veteran that the Veterans Law Judge who conducted the April 2013 Board hearing had retired, and the Veteran had a right to request an additional hearing before a different Veterans Law Judge. However, the Veteran indicated he did not want an additional Board hearing.

The claim for an increased rating for major depressive disorder was previously remanded in April 2016 for further development and adjudication. 


FINDINGS OF FACT

1. Prior to December 5, 2016, the Veteran's major depressive disorder was manifested by occupational and social impairment with reduced reliability and productivity due to symptoms such as depressed mood; anxiety; chronic sleep impairment; difficulty with short-term memory; disturbances of motivation and mood; and suicidal ideation. 

2. Since December 5, 2016, the Veteran's major depressive disorder is manifested by occupational and social impairment, with deficiencies in most areas, due to symptoms such as difficulty in establishing and maintaining effective work and social relationships; depressed mood; flattened affect; chronic sleep impairment; impairment of short- and long-term memory, such as retention of only highly learned material, forgetting to complete tasks; disturbances of motivation and mood; neglect of personal appearance and hygiene; and intermittent inability to perform activities of daily living, including maintenance of minimal personal hygiene.
 
3. The date entitlement arose for TDIU, December 5, 2016, is later than the date of the claim for TDIU. 


CONCLUSIONS OF LAW

1. The criteria for an initial rating in excess of 50 percent prior to December 5, 2016, for major depressive disorder have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.159, 4.1, 4.3, 4.10, 4.125, 4.126, 4.130, Diagnostic Code 9434 (2017).

2. The criteria for a rating in excess of 70 percent from December 5, 2016, for major depressive disorder, have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.159, 4.1, 4.3, 4.10, 4.125, 4.126, 4.130, Diagnostic Code 9434 (2017).

3. The criteria for an effective date earlier than December 5, 2016 for entitlement to a TDIU have not been met. 38 U.S.C. §§ 1155, 5103A, 5107, 5110, (2012); 38 C.F.R. §§ 3.340, 3.341, 3.400, 4.2, 4.3, 4.16 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Major Depressive Disorder

The Veteran contends that his service-connected major depressive disorder warrants higher ratings than currently assigned. A 50 percent rating is effective for the period prior to December 5, 2016 and a 70 percent rating is effective from December 5, 2016, under Diagnostic Code 9434. For the reasons that follow, the Board concludes that increased ratings are not warranted. 

The regulations for mental disorders are found in 38 C.F.R. §§ 4.125-4.130. The Board notes that psychiatric disabilities evaluated under Diagnostic Code 9434 are rated according to the General Rating Formula for Mental Disorders. 

The rating criteria provides a 50 percent rating for occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships.

A 70 percent rating is provided for occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); inability to establish and maintain effective relationships. 

A 100 percent rating is provided for total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. 38 C.F.R. §§ 4.125-4.130.

When determining the appropriate disability evaluation to assign, the Board's primary consideration is a Veteran's symptoms, but it must also make findings as to how those symptoms impact a Veteran's occupational and social impairment. Vazquez-Claudio v. Shinseki, 713 F.3d 112 (Fed. Cir. 2013); Mauerhan v. Principi, 16 Vet. App. 436 (2002). Because the use of the term "such as" in the rating criteria demonstrates that the symptoms after that phrase are not intended to constitute an exhaustive list, the Board need not find the presence of all, most, or even some, of the enumerated symptoms to award a specific rating. Id. at 442; see also Sellers v. Principi, 372 F.3d 1318 (Fed. Cir. 2004). Nevertheless, all ratings in the general rating formula are also associated with objectively observable symptomatology and the plain language of the regulation makes it clear that the Veteran's impairment must be "due to" those symptoms, a Veteran may only qualify for a given disability rating by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration. Vazquez-Claudio, 713 F.3d at 118.

The Board notes that the DSM-IV has been updated with a Fifth Edition (DSM-V). The evidence in this case includes Global Assessment of Functioning (GAF) scores. The GAF is a scale reflecting the "psychological, social, and occupational functioning in a hypothetical continuum of mental health-illness." Carpenter v. Brown, 8 Vet. App. 240, 242 (1995) (citing Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV)). However, effective August 4, 2014, VA issued an interim rule amending the portion of its Schedule for Rating Disabilities dealing with mental disorders and its adjudication regulations to refer to certain mental disorders in accordance with DSM-V. According to the DSM-V, clinicians do not typically assess GAF scores. It was recommended that the GAF be eliminated from DSM-V for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice. As the Veteran's claim was certified to the Board after August 4, 2014, the DSM-V is applicable to this case. Therefore, GAF scores will not be discussed further. Notwithstanding, any discussion of symptoms associated with any assigned score is still useful in evaluating the severity of the Veteran's disability.

Initial rating in excess of 50 percent prior to December 5, 2016

The Board finds that a rating in excess of 50 percent is not warranted prior to December 5, 2016.

The record contains extensive mental health treatment records for the Veteran. According to the record, the Veteran was admitted to the psychiatric emergency room in February 2011 for treatment of depression. The Veteran reported chronic depressed mood and guilt over the loss of his mother and friend. He also experienced poor sleep and difficulty getting out of bed. However, he denied any changes in appetite, energy, or interests. The Veteran's wife reported that he had told her he was "better off dead." However, the Veteran adamantly denied any suicidal or homicidal ideations, including intent or plan, and stated he would never harm himself. He further denied hopelessness or a wish to die. Instead, he was future-oriented and expressed wanting help with his issues. No paranoia, delusions, or psychotic symptoms were noted. On discharge, the practitioner noted that the Veteran was calm and cooperative with spontaneous and fluent speech, and determined that the Veteran was at low risk for suicide and violence. In a subsequent February 2011 mental health progress note, the practitioner noted that the Veteran reported feeling "much better" and stated that his depression had lifted. He also reported improvement with thought organization and stated that his wife noticed a big difference in his behavior. It was noted that the Veteran had happy mood, appropriate affect, and presented hypomanic. The Veteran denied suicidal and homicidal ideations and there was no evidence of psychosis. 

During a March 2014 VA health consultation, the Veteran reported having passive suicidal ideations for a long time. The Board notes that the Veteran expressed a desire not to "wake up in the morning" because his service-connected tinnitus was so bad. As to his tinnitus, the Veteran further stated that if he "[i]f [he] had [a] gun, [he'd] use it," while motioning with his hands pulling a trigger on his own head. The Veteran stated that he felt depressed, and reported lack of energy, a desire to "sleep all day...poor concentration, and feeling frustrated." He attributed his depression directly to his pain, pending compensation and pension claim, and tinnitus. As to suicidal thoughts, the Veteran stated he would never act on them and did not have any means or motivation for carrying out those thoughts. The psychologist concluded that the Veteran was at low risk of self-harm, basing this conclusion on the Veteran's statement that he would "never" kill himself due to the many people depending on him, and that he "knows" his depression will get better. 

The Veteran received a VA examination in April 2014 and was diagnosed with Major Depressive Disorder, Recurrent. The examiner found occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care and conversation. The Veteran exhibited symptoms of depressed mood and disturbances of motivation and mood. The examiner noted that the Veteran was dressed casually in appropriate clothing, well-groomed with good hygiene, and was pleasant and cooperative. The Veteran presented as calm and euthymic despite pain, and was in a good mood with congruent affect. He denied hallucinations, delusions, suicidal thoughts, or intent or plan for self-directed harm. The Veteran reported a mild reduction in his social activities, as his depression affected his family life and caused him to make excuses for not attending events. He stated he enjoyed spending time outside, fishing, and spending time with his grandchildren. However, he felt that his wife's recent diagnosis of lymphoma and his daughter's cancer diagnosis contributed to his depressed mood. The Veteran expressed ongoing difficulties with depressed mood, including loss of interest in activities, increased sleeping, difficulty concentrating, difficulty with short-term memory, weight gain, and thoughts about death. Additionally, the Veteran explained that his depression had worsened as his back pain worsened. 

In a January 2015 VA examination, the examiner noted that the Veteran's major depressive disorder was characterized by occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care and conversation. The Veteran reported a good relationship with his wife and great relationships with his adult daughter and three grandchildren. He also stated he had "a lot" of good friends and coworkers. The examiner noted symptoms of depressed mood, chronic sleep impairment, and disturbances of motivation and mood. The Veteran presented appropriately dressed and groomed, with context-appropriate affect, and was future-oriented. He denied current suicidal or homicidal ideations, and any history of suicide attempts, hallucinations, or delusional ideation. The examiner noted the Veteran was not at imminent risk for self-directed violence or for violence towards others. It was noted that when the Veteran experienced less back pain, he was able to socialize with his family and attend more events and his mood was less depressed. The examiner opined that that if the Veteran's back pain were to improve, some of his depressive symptoms would improve due to his ability to physically function better at home, engage in former hobbies, and attend more family functions. 

A July 2016 mental health progress note indicated that the Veteran reported improved mood and decreased anxiety. He stated that he had racing thoughts that appeared to be related to anxiety, and he was always talkative. The Veteran was appropriately dressed, alert, and cooperative, with fair judgment and insight. He denied hallucinations and current suicidal ideations. It was noted that the Veteran had no history of suicide attempts and his prior suicidal ideations were passive, without plan or intent. The practitioner concluded that the Veteran had low overall risk of danger to himself and others. 

Prior to December 5, 2016, the Veteran's symptoms are not so severe as to warrant a 70 percent rating. For the period on appeal, the Veteran's major depressive disorder was primarily manifested by depressed mood; anxiety; chronic sleep impairment; difficulty with short-term memory; disturbances of motivation and mood; and occasional suicidal ideation. While the Veteran did report a mild reduction in his social activities due to his back pain and depression causing him to miss family events, the evidence does not demonstrate an inability to establish and maintain effective relationships. The Veteran maintained a good relationship with his wife and great relationships with his adult daughter and grandchildren. He also reportedly enjoyed spending time with his grandchildren, fishing, and gambling. Throughout this period, the Veteran was consistently noted as casually and appropriately dressed, with adequate hygiene. The Board acknowledges that the Veteran reported suicidal ideation in February 2011, November 2012, and March 2014, but notes the Veteran indicated such thoughts were passive, and denied any plans or attempts to act on those thoughts. It was consistently noted that the Veteran was future-oriented and anticipated his depression would get better when his back pain improved. The Veteran has otherwise denied suicidal ideation throughout the appeal period under consideration, and the Board finds that the occasional thoughts of suicide do not rise to the level of severity as would be contemplated in a 70 percent rating. There is no indication of impaired impulse control, periods of violence, or obsessional rituals. Finally, the Veteran does not have a history of speech that is intermittently illogical, obscure, or irrelevant, near-continuous panic or depression affecting his ability to function, spatial disorientation, or similar symptoms.

Furthermore, the evidence of record does not show total occupational and social impairment as to warrant a 100 percent rating. While it has been demonstrated that the Veteran has significant symptoms of major depressive disorder, those symptoms have not prevented the Veteran from maintaining certain relationships, as he maintained relationships with his wife, daughter, grandchildren, friends, and coworkers. There is no indication of intermittent inability to perform activities of daily living. As set forth above, the Veteran was well-groomed on examination with good hygiene. While the Veteran's disability has some occupational impacts, it does not rise to the level of total occupational impairment. Furthermore, the evidence has demonstrated that the Veteran does not suffer from disorientation to time or place, delusions or hallucinations, gross impairment in thought processes or communication, or grossly inappropriate behavior. Though the Veteran experienced difficulty with short-term memory, the evidence shows he does not exhibit memory loss of names of close relatives or himself. Moreover, there is no evidence of a persistent danger of hurting himself or others, as the Veteran has consistently denied homicidal ideation. While he had occasional suicidal ideation, the Veteran denied attempts at taking his own life or developing plans for suicide. Thus, this would not rise to the level of being a persistent danger of hurting self. Given the foregoing, a 50 percent disabling evaluation is appropriate.

In reaching this decision, the Board has considered the Veteran's lay statements in support of his claim. The Board notes that the Veteran is competent to report observations with regard to the severity of his symptomatology. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). The Board finds these lay statements to be credible and consistent with the rating assigned. 

Accordingly, the Board finds that the evidence of record weighs heavily against a finding of an initial rating higher than 50 percent, prior to December 5, 2016.

Rating in excess of 70 percent from December 5, 2016

The Board finds that a rating in excess of 70 percent from December 5, 2016 is not warranted.

The Veteran received a VA examination in December 2016 and was again diagnosed with Major Depressive Disorder. The examiner found occupational and social impairment with reduced reliability and productivity. The Veteran exhibited symptoms of depressed mood, chronic sleep impairment, impairment of short- and long-term memory (e.g. retention of only highly learned material, while forgetting to complete tasks), disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, neglect of personal appearance and hygiene, and intermittent inability to perform activities of daily living, including maintenance of minimal personal hygiene. The examiner noted that the Veteran was capable of managing his financial affairs. The Veteran reported an "okay" relationship with his wife, stating that their relationship had been strained for many years and that their marriage was more for convenience in recent years. He claimed that he had generally positive relationships with his father and siblings, but maintained only some connection with his friends as they had grown tired of his excuses and did not bother with him. The Veteran also reported no longer enjoying hobbies and leisure activities that he previously liked, stating that he no longer "gets any enjoyment out of anything." The examiner noted that the Veteran was appropriately groomed and casually dressed, with generally linear and goal-directed thought process and fair insight and judgment. The Veteran was also polite and cooperative and made consistent eye contact. However, the Veteran had dysthymic mood with flat affect. The Veteran denied active suicidal/homicidal ideations, plan, or intent, and the examiner determined he was not at imminent risk for self-directed violence or for violence towards others. Additionally, there was no evidence of psychosis, paranoia, mania, or abnormalities in speech. The examiner opined that if the Veteran were to experience some relief or alleviation of his back pain, his depressive symptoms would also likely improve, as he would then be able to engage with family members and participate in his former hobbies.

The Veteran has been assigned a 70 percent rating for major depressive disorder from December 5, 2016. For the period on appeal, the Veteran's major depressive disorder was primarily manifested by difficulty in establishing and maintaining effective work and social relationships; depressed mood; flattened affect; chronic sleep impairment; impairment of short- and long-term memory, such as retention of only highly learned material, forgetting to complete tasks; disturbances of motivation and mood; neglect of personal appearance and hygiene; and intermittent inability to perform activities of daily living, including maintenance of minimal personal hygiene.

The evidence of record does not show occupational and social impairment as to warrant a 100 percent rating. While the Veteran has social impairment, it is not total, as he is still able to maintain relationships with his father and siblings, and some connection to his wife and friends. The Veteran does not have gross impairment in thought processes or communication or grossly inappropriate behavior, as the Veteran was polite and cooperative on examination. He also does not suffer from persistent delusions or hallucinations. The Veteran has some memory impairment, but he does not have memory loss for names of close relatives or his own name or occupation. Although the Veteran's disability has some occupational impacts, it does not rise to the level of total occupational impairment. The medical records reflect that the Veteran is able to perform certain tasks such as managing his financial affairs. Additionally, while the examiner noted intermittent inability to perform activities of daily living, including maintenance of minimal personal hygiene, the Veteran was appropriately groomed and casually dressed during the December 2016 VA examination. Furthermore, the evidence does not demonstrate a persistent danger of the Veteran hurting himself or others, as he has consistently denied suicidal or homicidal ideations. Given the foregoing, a 70 percent disabling evaluation is appropriate from December 5, 2016. 

The Board is aware that the symptoms listed under the 100 percent evaluation are essentially examples of the type and degree of symptoms for that evaluation, and that the Veteran need not demonstrate those exact symptoms to warrant a 100 percent evaluation. See Mauerhan v. Principi, 16 Vet. App. 436 (2002). However, the Board finds that the preponderance of the evidence, including the clinical findings, shows that from December 5, 2016, the Veteran's major depressive disorder symptoms more nearly approximate occupational and social impairment with deficiencies in most areas. The December 2016 examiner indicated a level of occupational and social impairment consistent with a 50 percent rating, but also reported some symptoms consistent with the 30 and 70 percent ratings, as well as a single symptom from the 100 percent rating. The Veteran does not, however, exhibit similar symptoms to those provided in the rating schedule for a 100 percent rating, of "similar severity, frequency, and duration." See Vazquez-Claudio v. Shinseki, 713 F.3d 112,117 (Fed. Cir. 2013); see also Mauerhan v. Principi, 16 Vet. App. 436 (2002). Accordingly, the Board finds that the evidence of record weighs heavily against a finding of rating of 100 percent from December 5, 2016. 
 
II. Earlier Effective Date for Entitlement to a TDIU

The Veteran seeks an effective date earlier than December 5, 2016 for the grant of a TDIU, to include a grant of TDIU on an extraschedular basis. Specifically, the Veteran asserts he has been totally disabled due to his service-connected disabilities since he retired in 2009. 

Except as otherwise provided, the effective date of a claim for increase will be the date of receipt of the claim or the date entitlement arose, whichever is later. 38 U.S.C. § 5110; 38 C.F.R. § 3.400. The effective date for an increased rating for disability compensation (in this case, assignment of a TDIU) will be the earliest date as of which it is factually ascertainable that an increase in disability occurred if a claim is received within one year from such date; otherwise, the effective date is the date of receipt of the claim. 38 U.S.C. § 5110(b)(2); 38 C.F.R. § 3.400(o)(2); see Gaston v. Shinseki, 605 F.3d 979, 984 (Fed. Cir. 2010) (holding that, in order to obtain an increased disability rating earlier than the date of the claim for increase, the evidence must show that the increase in disability occurred within the one year period prior to the date of claim for increase). With regard to the appropriate regulations to apply when determining an effective date for the award of TDIU, in Hurd v. West, 13 Vet. App. 449 (2000), the Court stated that "a TDIU claim is a claim for increased compensation, and the effective date rules for increased compensation apply to a TDIU claim." Id. at 450. As such, the grant of a TDIU is an award of increased disability compensation for purposes of assigning an effective date. Dalton v. Nicholson, 21 Vet. App. 23 (2007); Wood v. Derwinski, 1 Vet. App. 367, 369 (1991).

It is the established policy of VA that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities be rated totally disabled. 38 C.F.R. § 4.16. A finding of total disability is appropriate "when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation." 38 C.F.R. §§ 3.340 (a)(1), 4.15.

A TDIU may be assigned where the schedular rating is less than total when the claimant is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities, provided that, if there is only one such disability, it must be rated at 60 percent or more, and if there are two or more disabilities, there shall be at least one disability rated at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent. 38 C.F.R. § 4.16 (a). For the purpose of one 60 percent disability or one 40 percent disability, disabilities resulting from a common etiology or a single accident will be considered as one disability. 38 C.F.R. § 4.16 (a)(2) (2016).

For the Veteran to prevail on a claim for a TDIU, the sole fact that the Veteran is unemployed or has difficulty obtaining employment is not enough. The question is whether the Veteran is capable of performing the physical and mental acts required by employment, not whether the Veteran can find employment. Van Hoose v. Brown, 4 Vet. App. 361 (1993). In determining whether the Veteran is entitled to a TDIU, consideration may be given to the Veteran's level of education, special training, and previous work experience, but not to his or her age or the impairment caused by nonservice-connected disabilities. See 38 C.F.R. §§ 3.341, 4.16, 4.19.

In this case, for the period under appeal, the Veteran had a combined disability rating of 60 percent for the period from May 27, 2009 to December 5, 2016, based on the following disabilities: major depressive disorder, rated at 50 percent; lumbosacral strain, rated at 20 percent; tinnitus, rated at 10 percent; and bilateral hearing loss, rated at 0 percent. Since December 5, 2016, the Veteran has a combined disability rating of 80 percent based on the following disabilities: major depressive disorder, rated at 70 percent; lumbosacral strain, rated at 20 percent; tinnitus, rated at 10 percent; and bilateral hearing loss, rated at 0 percent. Accordingly, the Veteran met the threshold disability percentage requirements of 38 C.F.R. § 4.16(a) as of December 5, 2016. 

Turning to the effective date issue, VA received VA Form 21-8940 on June 29, 2009, in which the Veteran asserted his service-connected lower back disability prevented him from securing or following any substantially gainful occupation. VA also received VA Form 21-8940 on May 8, 2014, and the Veteran asserted he was unemployable due to his back disability and major depressive disorder. The Board acknowledges that the Veteran has also raised a claim for a TDIU throughout the appeal period for his increased rating claim for major depressive disorder under Rice v. Shinseki, 22 Vet. App. 447, 453-54 (2009) (a request for a TDIU, whether expressly raised by the veteran or reasonably raised by the record, is part of a rating issue). The Board finds that the claim for a TDIU was received by VA on June 29, 2009. However, under Rice, TDIU is an element of an appeal for an increased rating when raised by the record. Id. Thus, the effective date of TDIU is contingent on the effective date of the underlying increased rating claim, which in this case is May 27, 2009. As such, the remaining question is the date on which eligibility for a TDIU arose. 

On review of all the evidence, lay and medical, the Board finds that entitlement to a TDIU arose on December 5, 2016. The Veteran's combined disability rating combined is 80 percent from December 5, 2016. Previously, the Veteran's combined disability rating was 60 percent from May 27, 2009. The Veteran did not meet the threshold disability percentage requirements for TDIU prior to December 5, 2016. See 38 C.F.R. § 4.16(a). The Board also finds that a grant of TDIU prior to December 5, 2016 on an extraschedular basis is not warranted. 

The RO previously referred the issue of consideration of an extraschedular rating for a TDIU to the Director of Compensation and Pension Service. The Director concluded that an extraschedular rating was not warranted. However, pursuant to Wages v. McDonald, 27 Vet. App. 233, 236 (2015), nothing in the language of 38 C.F.R. § 4.16 (b) purports to limit the Board's scope of review of the Director's decision and that the Board shall be the final authority on all benefits decisions under 38 U.S.C. § 7104 (a). While Wages dealt with extraschedular TDIU, the Court extended a similar holding to extraschedular ratings under § 3.321(b). See Kuppamala v. McDonald, 27 Vet. App. 447 (2015). As such, the Board will make its own determination regarding whether the Veteran's symptoms warrant extraschedular ratings. 

The Board will not reproduce the medical evidence of record in its entirety in this section. Instead, this analysis will only focus on that evidence that pertains specifically to employment.

The Veteran submitted VA Form 21-8940 dated June 2009, in which he stated he worked as a mail handler at the U.S. Postal Service for 40 hours per week since November 1974. He noted that he had two years of college and stated his service-connected lower back disability prevented him from securing or following substantially gainful employment. In a May 2014 VA Form 21-8940, the Veteran cited his major depressive disorder, in addition to his lower back, as disabilities that prevented him from securing or following substantially gainful employment. He asserted that he became too disabled to work in October 2009, when he last worked full-time for the U.S. Postal Service. The Veteran also indicated that he did not have any additional education or training since he became too disabled to work. He stated that he had always planned to retire after 41 years and 10 months (the maximum retirement at 80 percent), but instead he retired after 38 years (72 percent retirement). 

The Veteran received a VA examination in January 2012, and it was noted that the Veteran's service-connected tinnitus and bilateral hearing loss did not impact the ordinary conditions of daily life, including the ability to work. 

In a September 2014 VA opinion, the examiner noted that based upon the record, the Veteran's service-connected low back condition would limit his ability to perform physical work, but not sedentary work. 

During VA examinations in April 2014 and January 2015, the examiners each noted occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care and conversation.
A private vocational assessment by S.H., M. Ed., CRC dated July 2015 is also of record. The vocational expert determined that the Veteran did not have transferable skills to perform sedentary work and thus would not be qualified to perform office work. Instead, S.H., M. Ed., CRC opined that the Veteran was qualified for work in loud environments where he would have difficulty hearing instructions due to his tinnitus and hearing loss, and would have difficulty with physical activities such as lifting, standing, and walking. The vocational expert ultimately concluded that it was more likely than not that the Veteran's service-connected disabilities prevented him from securing or following substantially gainful employment since he retired in 2009. 

In a May 2016 VA examination, it was noted that the Veteran's back condition impacted his ability to work in that he was unable to bend, stoop, lift or carry loads greater than 15 pounds, pull, or push. However, the examiner noted the Veteran was capable of most activities of daily living and able to perform sedentary, seated work with accommodative stretch breaks for prolonged sitting, such as driving.

The Director of Compensation and Pension Service issued an Advisory Opinion in January 2017, ultimately finding that the evidentiary record failed to show the Veteran was precluded from employment due to his service-connected disabilities, and entitlement to extraschedular TDIU was not warranted. The Director stated that the objective evidence from multiple VA examinations did not support the vocational expert's conclusion that the Veteran was entirely precluded from employment since 2009.

The evidence of record does not show impairment so severe as to prevent the Veteran from securing and maintaining employment prior to December 5, 2016. Rather, the probative evidence of record does not demonstrate the Veteran is unemployable solely due to his service-connected disabilities.

The Board considers the Veteran's assertions that he is unable to work as a result of his service-connected disabilities, and recognizes that it must analyze the competency, credibility and probative value of the evidence, account for the evidence that it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. See Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir.1996) (table); Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994). The Board finds that the Veteran is competent to report symptoms such as ringing in the ears, difficulty hearing, back pain, and symptoms associated with depression.

Notwithstanding, the Board finds that the Veteran's assertions of unemployability are outweighed by the most probative medical evidence of record, which indicates that prior to December 5, 2016, his service-connected disabilities did not prevent him from obtaining substantially gainful employment due to functional impairment. There is no evidence in the record to support a finding that the Veteran was totally precluded from employment due to his disabilities prior to December 5, 2016. Therefore, TDIU on an extraschedular basis due to service-connected disabilities is not warranted. 

In sum, the presently assigned effective date of December 5, 2016 is appropriate and there is no basis for an award of TDIU prior to that date. As the preponderance of the evidence is against the claim, the benefit of the doubt rule is not applicable. See 38 U.S.C. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).


ORDER

An initial rating in excess of 50 percent prior to May 27, 2009, for service-connected major depressive disorder is denied.

A rating in excess of 70 percent from December 5, 2016, for service-connected major depressive disorder is denied.

An effective date earlier than December 5, 2016 for the award of TDIU is denied.




____________________________________________
JENNIFER HWA
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs